37 Cal.Rptr.3d 258 (2005)
135 Cal.App.4th 100
In re AUTOMOBILE ANTITRUST CASES I AND II.
No. A109805.
Court of Appeal, First District, Division Four.
December 22, 2005.
*264 Zelle, Hofmann, Voelbel Mason & Gette, Craig C. Corbitt, Judith A. Zahid, Furth Firm, Michael P. Lehmann, Christopher L. Lebsock, San Francisco, for appellants.
Gibson, Dunn & Crutcher, Peter Sullivan, Douglas B. Miner, Raminta A. Rudys, Joel Sanders, San Francisco, for Nissan Motor Ltd.
Orrick, Herrington & Sutcliffe, Norman C. Hile, Michael C. Weed, Sacramento, for Honda Motors Co., Ltd.
Buchalter, Nemer, Fields & Younger, Richard Darwin, San Francisco, Fried, Frank, Harris Shriver & Jacobson, Eric H. Queen, Deborah A. Garza, Franklin M. Rubenstein, Los Angeles, for Canadian Automobile Dealers Association.
Herzfeld & Rubin, Craig L. Winterman, Jeffrey Chase, Los Angeles, for Volkswagen AG.
Certified For Partial Publication.[*]
REARDON, Acting P.J.
In this coordinated proceeding, the trial court concluded that it lacked personal jurisdiction over four nonresident foreign defendants: Honda Motors Co., Ltd. of Japan (Honda), Volkswagen AG of Germany (Volkswagen), Nissan Motor Ltd. of Japan (Nissan) and the Canadian Automobile Dealers' Association (CADA) of Canada. As such, it granted motions to quash service of summons brought by each of these defendants. The plaintiffs[1] appeal, contending that the three parent manufacturers (1) are subject to the specific jurisdiction of California courts under the stream of commerce doctrine and (2) to this state's general jurisdiction under the representative services doctrine. They also argue that (3) the trial court had specific jurisdiction over the trade association pursuant to the effects test and (4) because CADA furthered a conspiracy while present in this state. The plaintiffs also contend that (5) for California courts to exercise jurisdiction over these four *265 nonresident defendants would be consistent with fair play and substantial justice. Alternatively, they reason that (6) the trial court erred when it denied them a continuance to conduct further jurisdictional discovery against the three parent manufacturers. For their part, Honda and Volkswagen (7) ask us to take judicial notice of certain documents. We deny the requests for judicial notice and conclude that our long-arm statute does not reach the four nonresident defendants before us on appeal. Thus, we affirm the trial court's order granting their motions to quash service of summons.

I. FACTS
Some motor vehicles are sold by Canadian distributors at a cost substantially less than that charged by California distributors for nearly identical vehicles.[2] As a result of this price differential, Canadian exports of motor vehicles to California once rose dramatically. When Canadian motor vehicle distributors were threatened with penalties such as surcharges and loss of franchises if they continued to export their vehicles to California consumers, exports from Canada to the United States fell. As California is the largest market for motor vehicles in this country and one of the top six of such markets worldwide, the impact of declining motor vehicle exports from Canada into this state could be substantial.
In this appeal, the plaintiffs allege that various motor vehicle manufacturers, automobile distributors and motor vehicle trade associations illegally conspired to prevent the export of Canadian motor vehicles into California in order to maintain a higher price for the same vehicles sold in this state. Beginning in February 2003, many separate lawsuits were filed in California against various motor vehicle manufacturers, distributors and trade associations. Each lawsuit was filed as a class action brought on behalf of individuals who purchased new vehicles in California that were manufactured or distributed within a certain time period by one of the named defendants. The lawsuits alleged state law causes of action for antitrust conspiracy and unfair business practices. (See Bus. & Prof.Code, §§ 16720-16728, 17200-17210.) A similar lawsuit has been filed in federal court against many of the same defendants, alleging violations of federal antitrust laws. (See In re New Motor Vehicles Canadian Export (D.Me.2004) 307 F.Supp.2d 136, 137-138.)
Among the defendants named in the state lawsuits now before us on appeal were the Japanese and German corporations Honda, Volkswagen and Nissan, as well as their American and Canadian subsidiaries. Honda, Volkswagen and Nissan are the parent manufacturers of some of the motor vehicles, the sales of which are the subject of the alleged conspiracy in these matters. Nonprofit CADA was also named as a defendant. CADA is a trade organization that represents, promotes and protects the interests of franchised automobile dealers in Canada. It does not sell or lease vehicles in Canada or the United States. (See In re New Motor Vehicles Canadian Export, supra, 307 F.Supp.2d at p. 152.)
In July 2003, the state lawsuits were consolidated by order of this state's Judicial Case Coordination Panel. In October 2003, the named plaintiffs filed a consolidated amended class action complaint. At some point, it appears that CADA was *266 served with a complaint and summons in Canada. In November 2003, CADA made a special appearance to file a motion to quash that summons for lack of personal jurisdiction. Plaintiffs opposed the motion to quash on various grounds, including the need for additional time for discovery in order to learn facts enabling them to establish personal jurisdiction. The trial court heard CADA's motion to quash in March and April 2004. It found no basis for finding general jurisdiction at that time, but permitted the plaintiffs to conduct further discovery in order to develop jurisdictional facts about several Canadian defendants, including CADA. In June 2004, the trial court appointed a discovery referee to oversee jurisdictional discovery to be completed by October 2004.
Meanwhile, in July 2004, the three parent manufacturers  Honda, Volkswagen and Nissan  were each served in Japan and Germany with an amended complaint and summons. In September and October 2004, all three parent manufacturers  each making a special appearance  moved to quash service of summons for lack of personal jurisdiction. The plaintiffs opposed the parent manufacturers' motions to quash on various grounds, again including a request for additional time for discovery of jurisdictional facts before the trial court ruled on the motions to quash.
On December 16, 2004, the trial court conducted further hearing on the motions to quash. It found that the only potential basis of jurisdiction over Honda, Nissan and Volkswagen would be special jurisdiction, not general jurisdiction. It issued tentative rulings denying the request for time to conduct further discovery of facts supporting the exercise of jurisdiction; finding that the plaintiffs failed to meet their burden of proving jurisdiction; and indicating an intention to grant the motions to quash filed by all four foreign defendants. Two weeks later, the trial court filed a formal order granting the motions to quash, consistent with its tentative decision.

II. JUDICIAL NOTICE[*]

III. LAW OF JURISDICTION

A. Legal Framework

In order to understand the merits of the plaintiffs' various claims of jurisdiction over the four nonresident defendants named in this appeal, we review the settled law of jurisdiction. California courts may exercise jurisdiction on any basis that is not inconsistent with the state and federal Constitutions. (Code Civ. Proc., § 410.10 [long-arm statute]; Snowney v. Harrah's Entertainment, Inc. (2005) 35 Cal.4th 1054, 1061, 29 Cal.Rptr.3d 33, 112 P.3d 28, cert. den. sub nom. Harrah's Las Vegas, Inc. v. Snowney (Nov. 14, 2005, No. 05-324) ___ U.S. ___, 126 S.Ct. 659, ___ L.Ed.2d ___ (Snowney); Vons Companies, Inc. v. Seabest Foods, Inc. (1996) 14 Cal.4th 434, 444, 58 Cal.Rptr.2d 899, 926 P.2d 1085, cert. den. sub nom. Washington Restaurant Management, Inc. v. Vons Cos., Inc. (1997) 522 U.S. 808, 118 S.Ct. 47, 139 L.Ed.2d 13 (Vons); Bridgestone Corp. v. Superior Court (2002) 99 Cal.App.4th 767, 773, 121 Cal.Rptr.2d 673, cert. den. sub nom. Bridgestone Corp. v. T & T Truck & Crane Service, Inc. (2003) 537 U.S. 1233, 123 S.Ct. 1356, 155 L.Ed.2d 197 (Bridgestone); As You Sow v. Crawford Laboratories, Inc. (1996) 50 Cal.App.4th 1859, 1866-1867, 58 Cal.Rptr.2d 654 (As You Sow).) By imposing only these constitutional limitations, our Legislature has authorized the broadest possible exercise of jurisdiction. (Sibley v. Superior Court (1976) 16 Cal.3d 442, 445, 128 Cal.Rptr. 34, *267 546 P.2d 322, cert. den. sub nom. Carlsberg Mobile Home Properties, Ltd. '72 v. Sibley (1976) 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89; Abbott Power Corp. v. Overhead Electric Co. (1976) 60 Cal.App.3d 272, 276, 131 Cal.Rptr. 508.)
A state court's assertion of personal jurisdiction over a nonresident defendant not served with process in California comports with federal due process if the defendant had such minimum contacts with the state that the assertion of jurisdiction does not violate traditional notions of fair play and substantial justice. (Internat. Shoe Co. v. Washington (1945) 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95; Snowney, supra, 35 Cal.4th at p. 1061, 29 Cal.Rptr.3d 33, 112 P.3d 28; Vons, supra, 14 Cal.4th at pp. 444-445, 58 Cal.Rptr.2d 899, 926 P.2d 1085; Bridgestone, supra, 99 Cal.App.4th at p. 773, 121 Cal.Rptr.2d 673; As You Sow, supra, 50 Cal.App.4th at p. 1867, 58 Cal.Rptr.2d 654.) A nonresident must have fair warning that a particular activity may subject it to jurisdiction in this state. (Vons, supra, 14 Cal.4th at pp. 446-447, 58 Cal.Rptr.2d 899, 926 P.2d 1085; see Shaffer v. Heitner (1977) 433 U.S. 186, 218, 97 S.Ct. 2569, 53 L.Ed.2d 683 (conc. opn. of Stevens, J.).) As a matter of fairness, federal constitutional principles prohibit a nonresident defendant from being brought before a California court as the result of random, fortuitous or attenuated contacts or because of the unilateral activity of a third party. (Burger King Corp. v. Rudzewicz (1985) 471 U.S. 462, 474-475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (Burger King); Vons, supra, 14 Cal.4th at p. 445, 58 Cal.Rptr.2d 899, 926 P.2d 1085.)
Personal jurisdiction may be general or specific. A nonresident defendant may be subject to the general jurisdiction of California courts if its contacts in this state are substantial, continuous and systematic. (Snowney, supra, 35 Cal.4th at p. 1062, 29 Cal.Rptr.3d 33, 112 P.3d 28; Vons, supra, 14 Cal.4th at p. 445, 58 Cal.Rptr.2d 899, 926 P.2d 1085; Bridgestone, supra, 99 Cal.App.4th at p. 773, 121 Cal.Rptr.2d 673; As You Sow, supra, 50 Cal.App.4th at p. 1867, 58 Cal.Rptr.2d 654; see Helicopteros Nacionales de Colombia v. Hall (1984) 466 U.S. 408, 414-415, 104 S.Ct. 1868, 80 L.Ed.2d 404.) One method of demonstrating general jurisdiction is satisfying the representative services test, discussed in more detail below. (See F. Hoffman-La Roche v. Superior Court (2005) 130 Cal.App.4th 782, 796, 30 Cal.Rptr.3d 407 (F. Hoffman-La Roche); see also pt. IV.B., post.) If general jurisdiction is proper, this test may bring the defendant before California courts even if the cause of action is unrelated to the defendant's activities in this state. (Paneno v. Centres for Academic Programmes Abroad Ltd. (2004) 118 Cal.App.4th 1447, 1455, 13 Cal.Rptr.3d 759.)
If a nonresident defendant does not have sufficient contacts in California to establish general jurisdiction, it may still be subject to the specific jurisdiction of our courts if there is a sufficient nexus among the defendant, the state and the litigation. (Snowney, supra, 35 Cal.4th at p. 1062, 29 Cal.Rptr.3d 33, 112 P.3d 28; see Burger King, supra, 471 U.S. at pp. 472-473, 105 S.Ct. 2174; Helicopteros Nacionales de Colombia v. Hall, supra, 466 U.S. at p. 414, 104 S.Ct. 1868; Vons, supra, 14 Cal.4th at pp. 446, 58 Cal.Rptr.2d 899, 926 P.2d 1085; F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 796, 30 Cal.Rptr.3d 407; Bridgestone, supra, 99 Cal.App.4th at pp. 773-774, 121 Cal.Rptr.2d 673.) Three distinct theories of specific jurisdiction are at issue in this appeal  the stream of commerce doctrine, the effects test, and the commission of acts in California in furtherance of a conspiracy. Each of these methods *268 of demonstrating specific jurisdiction is set forth below. (See pts. IV.A., V.A., V.B., post.) These guidelines are not clear-cut and are not susceptible to mechanical application. Instead, courts take a highly realistic approach, weighing the facts in each case to determine whether the defendant's contacts with California are sufficient to support an exercise of jurisdiction consistent with federal due process. (Snowney, supra, 35 Cal.4th at p. 1061, 29 Cal.Rptr.3d 33, 112 P.3d 28; Bridgestone, supra, 99 Cal.App.4th at p. 774, 121 Cal.Rptr.2d 673; see Burger King, supra, 471 U.S. at pp. 471-472, 478-479, 486, fn. 29, 105 S.Ct. 2174; Vons, supra, 14 Cal.4th at p. 450, 58 Cal.Rptr.2d 899, 926 P.2d 1085.)
These constitutional considerations prompt courts to use restraint when determining jurisdictional questions. We are even more cautious in our application of the law of personal jurisdiction when the nonresident defendant is from another nation rather than another state. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 795, 30 Cal.Rptr.3d 407; see Sonora Diamond Corp. v. Superior Court (2000) 83 Cal.App.4th 523, 536, 99 Cal.Rptr.2d 824 (Sonora).) When the defendant is from a foreign nation, a high barrier of sovereignty tends to undermine the reasonableness of exercising personal jurisdiction in this state. (See Glencore Grain v. Shivnath Rai Harnarain (9th Cir.2002) 284 F.3d 1114, 1126.) In such circumstances, we weigh the relevant contacts by the international corporations in this state, considering the interests of other nations as well as our own country's interest in foreign relations. We make a careful inquiry into the reasonableness of the assertion of jurisdiction in the case before us, being unwilling to find the serious burden on an alien defendant outweighed by minimal interests of the plaintiff or of California. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at pp. 795-796, 805, 30 Cal.Rptr.3d 407; see Asahi Metal Industry Co. v. Superior Court (1987) 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92.) To exercise personal jurisdiction in these circumstances would be unreasonable and unfair. (See Asahi Metal Industry Co. v. Superior Court, supra, at p. 116, 107 S.Ct. 1026.)

B. Burden of Proof

The procedural rules that apply when a defendant moves to quash service of summons for lack of jurisdiction are also well settled. Although the defendant is the moving party, the plaintiff must carry the initial burden of demonstrating facts by a preponderance of evidence justifying the exercise of jurisdiction in California. (Snowney, supra, 35 Cal.4th at p. 1062, 29 Cal.Rptr.3d 33, 112 P.3d 28; Vons, supra, 14 Cal.4th at p. 449, 58 Cal.Rptr.2d 899, 926 P.2d 1085; Bridgestone, supra, 99 Cal.App.4th at p. 774, 121 Cal.Rptr.2d 673; As You Sow, supra, 50 Cal.App.4th at p. 1866, 58 Cal.Rptr.2d 654.) The merits of the complaint are not at issue at this stage of proceedings. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 794, 30 Cal.Rptr.3d 407.) However, when personal jurisdiction is asserted on the basis of a nonresident defendant's alleged activities in this state, facts relevant to jurisdiction may also bear on the merits of the complaint. (Regents of University of New Mexico v. Superior Court (1975) 52 Cal.App.3d 964, 970, fn. 7, 125 Cal.Rptr. 413.) The jurisdictional facts shown must pertain to each separate nonresident defendant, even in a case alleging a conspiracy. (Kaiser Aetna v. Deal (1978) 86 Cal.App.3d 896, 900, 150 Cal.Rptr. 615 (Kaiser).)
The plaintiff must do more than merely allege jurisdictional facts. It *269 must present evidence sufficient to justify a finding that California may properly exercise jurisdiction over the defendant. (See Sonora, supra, 83 Cal.App.4th at p. 540, 99 Cal.Rptr.2d 824.) The plaintiff must provide affidavits and other authenticated documents in order to demonstrate competent evidence of jurisdictional facts. Allegations in an unverified complaint are insufficient to satisfy this burden of proof. Declarations cannot be mere vague assertions of ultimate facts, but must offer specific evidentiary facts permitting a court to form an independent conclusion on the issue of jurisdiction. (Paneno v. Centres for Academic Programmes Abroad Ltd., supra, 118 Cal.App.4th at p. 1454, 13 Cal.Rptr.3d 759; Jewish Defense Organization, Inc. v. Superior Court (1999) 72 Cal.App.4th 1045, 1055, 85 Cal.Rptr.2d 611; Ziller Electronics Lab GmbH v. Superior Court (1988) 206 Cal.App.3d 1222, 1233, 254 Cal.Rptr. 410.) Once the plaintiff satisfies the initial burden of proof of showing a defendant's minimum contacts in California, the burden shifts to the defendant to present a compelling case demonstrating that the exercise of jurisdiction by our courts would be unreasonable. (Snowney, supra, 35 Cal.4th at p. 1062, 29 Cal.Rptr.3d 33, 112 P.3d 28; Vons, supra, 14 Cal.4th at pp. 449, 476, 58 Cal.Rptr.2d 899, 926 P.2d 1085; Bridgestone, supra, 99 Cal.App.4th at p. 774, 121 Cal.Rptr.2d 673; see Burger King, supra, 471 U.S. at pp. 476-477, 105 S.Ct. 2174.)

C. Standard of Review

When the trial court rules after hearing conflicting evidence on a factual issue, we must uphold its factual determinations on appeal if substantial evidence supports them. When the facts are undisputed, the issue of jurisdiction becomes a pure question of law. (Snowney, supra, 35 Cal.4th at p. 1062, 29 Cal.Rptr.3d 33, 112 P.3d 28; Vons, supra, 14 Cal.4th at p. 449, 58 Cal.Rptr.2d 899, 926 P.2d 1085; Bridgestone, supra, 99 Cal.App.4th at p. 774, 121 Cal.Rptr.2d 673.) The ultimate question of whether a California court's exercise of jurisdiction is fair and reasonable is a legal determination subject to our independent review on appeal. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 794, 30 Cal.Rptr.3d 407.) Although the parent manufacturers are the moving parties on the motions to quash, we focus first on whether the plaintiffs made a sufficient showing of the jurisdictional facts on which they bear the initial burden of proof. (See, e.g., Sonora, supra, 83 Cal.App.4th at p. 535, 99 Cal.Rptr.2d 824.)

D. Inferences

In their complaint, the plaintiffs allege that the defendants were subject to the jurisdiction of California courts because each participated in a conspiracy to the detriment of our state's consumers. In the trial court, counsel for the plaintiffs argued that the jurisdictional discovery completed by that time had satisfied him that the Canadian defendants and the parent manufacturers were involved in the alleged conspiracy and that they were targeting California consumers. He encouraged the trial court to make a similar inference from the evidence he offered. However, he admitted that he had not done any jurisdictional discovery against any of these three parent manufacturers  Honda, Volkswagen and Nissan. Instead, he relied on evidence that other parent manufacturers  for example, BMW  had been monitoring export activities from Canada to California.
The plaintiffs' counsel conceded that he had found no similar evidence against Honda, Volkswagen and Nissan, only evidence tending to implicate other parent manufacturers. The trial court found that this evidence did not satisfy the plaintiffs' *270 obligation to establish facts supporting California's exercise of personal jurisdiction against these three nonresident defendants. It also concluded that the plaintiffs did not prove its case for personal jurisdiction over CADA. Thus, it granted the motions to quash service of summons that had been filed by Nissan, Volkswagen, Honda and CADA on grounds of lack of jurisdiction. On the specific question of drawing an inference to support jurisdiction, the trial court concluded that the proffered evidence was too imprecise and speculative to support a rational inference based on California activities.
On appeal, the plaintiffs argue that the trial court erred in requiring them to demonstrate jurisdictional facts by a preponderance of evidence because the facts necessary to establish jurisdiction are "inseparably intertwined" with those facts necessary to establish liability. They assert that to require them to prove jurisdictional facts by a preponderance of evidence at this stage of the proceedings would be impractical, as it would effectively require them to prove the merits of their conspiracy case at the outset of litigation. The plaintiffs assert that antitrust violations may be proven by inference, suggesting that jurisdiction in an antitrust case may also be inferred. They reason that California courts should exercise jurisdiction if a plaintiff can demonstrate facts raising an inference in support of his or her theory of liability in such cases. To do otherwise, they urge, would be to view the evidence of conspiracy "through an improperly narrow jurisdictional lens."
In essence, the plaintiffs argue that the trial court must draw an inference that would compel a finding of liability  and thus, a finding of jurisdiction  if such an inference could be raised from the facts that they establish. We disagree, for many reasons. First, the legal authorities that the plaintiffs cite do not support their claim that the trial court must draw an inference tending to support a finding of liability and jurisdiction. Those authorities demonstrate only that a trial court may draw such an inference from proven facts; they do not hold that the trial court must do so. (See Sibley v. Superior Court, supra, 16 Cal.3d at p. 446, 128 Cal.Rptr. 34, 546 P.2d 322; Serafini v. Superior Court (1998) 68 Cal.App.4th 70, 81, 80 Cal.Rptr.2d 159 [dicta; insufficient evidence to allow inference]; see also Taylor-Rush v. Multitech Corp. (1990) 217 Cal.App.3d 103, 114, 265 Cal.Rptr. 672 [prima facie case of existence of conspiracy required to demonstrate jurisdiction]; Regents of University of New Mexico v. Superior Court, supra, 52 Cal.App.3d at p. 970 fn. 7, 125 Cal.Rptr. 413 [prima facie showing of liability required if jurisdiction linked with validity of substantive claim].) The plaintiffs suggest that such a mandatory inference rule applies in federal court, but a careful reading of their cited federal case supports a contrary conclusion. This case does not require a court to draw such an inference; again, it merely permits this inference to be drawn from other evidence properly before the trial court. (See In re New Motor Vehicles Canadian Export, supra, 307 F.Supp.2d at p. 153.)
Second, requiring the trial court to draw an inference in favor of jurisdiction in the circumstances before us would lighten the plaintiffs' burden of proof of jurisdictional facts. (See Snowney, supra, 35 Cal.4th at p. 1062, 29 Cal.Rptr.3d 33, 112 P.3d 28; Vons, supra, 14 Cal.4th at p. 449, 58 Cal.Rptr.2d 899, 926 P.2d 1085; Bridgestone, supra, 99 Cal.App.4th at p. 774, 121 Cal.Rptr.2d 673.) That burden of proof is grounded in constitutional guarantees of due process. We cannot set aside principles of fairness and reasonableness, but must show proper regard for them. (See Internat. Shoe Co. v. Washington, supra, *271 326 U.S. at p. 316, 66 S.Ct. 154; Snowney, supra, 35 Cal.4th at pp. 1061-1062, 29 Cal.Rptr.3d 33, 112 P.3d 28.) This would be particularly troubling in a case  such as the one before us  involving defendants from foreign nations. We are charged to apply a higher degree of care when considering jurisdictional issues in such circumstances. (See F. Hoffman-La Roche, supra, 130 Cal.App.4th at pp. 795-796, 30 Cal.Rptr.3d 407; see also Asahi Metal Industry Co. v. Superior Court, supra, 480 U.S. at pp. 115-116, 107 S.Ct. 1026; Glencore Grain v. Shivnath Rai Harnarain, supra, 284 F.3d at p. 1126.)
Third, a mandatory inference could violate the principle that jurisdictional facts must pertain to each individual defendant. Allegations of conspiracy do not establish as a matter of law that if one conspirator comes within the personal jurisdiction of our courts, then California may exercise jurisdiction over other nonresident defendants who are alleged to be part of that same conspiracy. Personal jurisdiction must be based on forum-related acts that were personally committed by each nonresident defendant. The purposes and acts of one party  even an alleged co-conspirator  cannot be imputed to a third party to establish jurisdiction over the third party defendant. (Kaiser, supra, 86 Cal.App.3d at p. 901, 150 Cal.Rptr. 615.)
In the trial court, the plaintiffs suggested that evidence tending to prove that other parent manufacturers had entered into the alleged conspiracy constituted evidence raising an inference that the three parent manufacturers before us  Honda, Volkswagen and Nissan  were also involved in that conspiracy. However, we find that the trial court acted within its authority when it required the plaintiffs to establish jurisdictional facts pertaining to each of the nonresident defendants. (See Kaiser, supra, 86 Cal.App.3d at p. 901, 150 Cal.Rptr. 615.)
Fourth and perhaps most importantly, such a mandatory inference would interfere with the trial court's function as factfinder on jurisdictional issues. On review, we apply our independent judgment to the ultimate question of jurisdiction, but to the extent that the question of jurisdiction turns on factual issues, we are bound by the trial court's findings of fact if they are supported by substantial evidence. (See Vons, supra, 14 Cal.4th at p. 449, 58 Cal.Rptr.2d 899, 926 P.2d 1085; Bridgestone, supra, 99 Cal.App.4th at p. 774, 121 Cal.Rptr.2d 673.) We have no power to substitute our own assessment of the facts for that of the trial court if substantial evidence supports the its finding. (See DiMartino v. City of Orinda (2000) 80 Cal.App.4th 329, 336, 95 Cal.Rptr.2d 16.) That is a trial court function, not one for us as an appellate court.
In this matter, the trial court considered the plaintiffs' invitation to draw an inference supporting their allegations of conspiracy  an inference that would also support a finding of jurisdiction  but rejected it. Representatives of all four nonresident defendants filed declarations in the trial court stating facts in opposition to the proper exercise of personal jurisdiction in California. CADA also submitted deposition excerpts tending to dispute the plaintiffs' claim that export issues were discussed in any detail at a February 2003 motor vehicle trade meeting in San Francisco that CADA's president attended. Apparently, the trial court found the evidence offered by the four nonresident defendants to be more persuasive than that offered by the plaintiffs. The trial court acted within its authority when it found that the plaintiffs did not establish the required jurisdictional facts to support their various theories of jurisdiction.

*272 IV. JURISDICTION OVER PARENT MANUFACTURERS

A. Stream of Commerce

1. Legal Background

On appeal, the plaintiffs contend that Honda, Volkswagen and Nissan are subject to the jurisdiction of California courts, on two theories. They first argue that California courts may properly exercise specific jurisdiction over these German and Japanese parent manufacturers because the nonresident defendants introduced their products into the stream of commerce in this state. The trial court ruled that the plaintiffs did not meet their burden of proving this theory of jurisdiction because they offered insufficient evidence of a connection between the California activities of the parent manufacturers and the plaintiffs' alleged conspiracy. It reasoned that the object of the alleged conspiracy  to keep motor vehicles out of American markets  was not sufficiently related to parent manufacturers' activities of bringing motor vehicles into this market. On this basis, the trial court granted the motions to quash filed by these defendants. On appeal, the plaintiffs dispute the trial court's legal conclusions.
California courts have specific jurisdiction over a nonresident defendant pursuant to the stream of commerce test if three elements are established. First, the defendant must have purposefully availed itself of the privilege of conducting activities in this state, thus invoking the benefits and protections of our laws. Second, the underlying dispute must be substantially connected to or arise out of the defendant's contacts with this state. Third, the court must be satisfied that an exercise of jurisdiction would be reasonable and fair, consistent with notions of fair play and substantial justice. (Bridgestone, supra, 99 Cal.App.4th at pp. 773-774, 121 Cal. Rptr.2d 673; see Snowney, supra, 35 Cal.4th at p. 1062, 29 Cal.Rptr.3d 33, 112 P.3d 28; F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 796, 30 Cal.Rptr.3d 407; see also Burger King, supra, 471 U.S. at pp. 472-473, 475-478, 105 S.Ct. 2174; Vons, supra, 14 Cal.4th at pp. 446, 58 Cal.Rptr.2d 899, 926 P.2d 1085.) On appeal, we review the trial court's ruling. If that ruling is correct, we must affirm even if the trial court's reasoning was incorrect. (See Bridgestone, supra, 99 Cal.App.4th at p. 774, 121 Cal.Rptr.2d 673.)

2. Purposeful Availment

On appeal, the plaintiffs contend that because Honda, Volkswagen and Nissan motor vehicles have been placed into the stream of commerce in California, the three parent manufacturers have purposefully availed themselves of the benefits of conducting activities in this state.[6] (See, e.g., Snowney, supra, 35 Cal.4th at pp. 1062-1067, 29 Cal.Rptr.3d 33, 112 P.3d 28.) The purposeful availment prong of this jurisdictional test focuses on the defendant's intent. It is satisfied if the defendant purposefully and voluntarily directs its acts toward the forum so that it should expect, because of the benefit it receives, to be subject to the court's jurisdiction based on its forum contacts. (Id. at p. *273 1062, 29 Cal.Rptr.3d 33, 112 P.3d 28; Pavlovich v. Superior Court (2002) 29 Cal.4th 262, 269, 127 Cal.Rptr.2d 329, 58 P.3d 2 (Pavlovich).)
The parent manufacturers dispute the claim of purposeful availment in several ways, first by asserting that they do not sell motor vehicles in California  that only their American subsidiaries do so. However, the indirect placement of products into the stream of commerce does not necessarily insulate a foreign manufacturer from the jurisdiction of California courts. Even an indirect effort to serve a California market for a manufacturer's product may reasonably make that manufacturer subject to suit in California if its product has caused injury. (Bridgestone, supra, 99 Cal.App.4th at p. 777, 121 Cal.Rptr.2d 673.)
The parent manufacturers argue that this indirect contact is too attenuated to support jurisdiction in this case. The case law does not support their claim. Indeed, a California court will not exceed its authority under federal due process constraints if it asserts personal jurisdiction over a nonresident corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by California consumers. (See Bridgestone, supra, 99 Cal.App.4th at pp. 775-777, 121 Cal.Rptr.2d 673; see also World-Wide Volkswagen Corp. v. Woodson (1980) 444 U.S. 286, 297-298, 100 S.Ct. 559, 62 L.Ed.2d 490.) A nonresident defendant's indirect sales through its California distributors constitute economic activity in California as a matter of commercial actuality when the defendant earned substantial gross income from that activity. (See Bridgestone, supra, 99 Cal.App.4th at pp. 775-776, 121 Cal.Rptr.2d 673; see also As You Sow, supra, 50 Cal.App.4th at pp. 1871-1872, 58 Cal.Rptr.2d 654.) In this case, there can be little doubt that sales of these three parent manufacturers' motor vehicles in California  the sixth largest motor vehicle market in the world  result in significant earnings for these three nonresident defendants. (See Bridgestone, supra, 99 Cal.App.4th at p. 777, 121 Cal. Rptr.2d 673 [tire sales]; see also § 452, subds. (g), (h).) Thus, we are satisfied that the plaintiffs met their burden of proof of the first, purposeful availment prong of the stream of commerce test.

3. Substantial Connection

Next, we must consider whether the plaintiffs have proven the second prong of this jurisdictional test  whether the controversy is related to or arises out of the defendants' contacts with California. (See Snowney, supra, 35 Cal.4th at pp. 1067-1070, 29 Cal.Rptr.3d 33, 112 P.3d 28.) The plaintiffs contend that they proved a substantial nexus or connection between the defendants' activity in California and the price-fixing conspiracy that they allege in their complaint. (See Snowney, supra, 35 Cal.4th at p. 1068, 29 Cal.Rptr.3d 33, 112 P.3d 28; Bridgestone, supra, 99 Cal.App.4th at p. 774, 121 Cal.Rptr.2d 673.) If the operative facts of the allegations of the complaint do not relate to the parent manufacturers' contacts in this state, then the cause of action does not arise from that contact such that California courts may exercise specific jurisdiction. (See Snowney, supra, 35 Cal.4th at p. 1068, 29 Cal. Rptr.3d 33, 112 P.3d 28.) The trial court ruled that the plaintiffs did not prove this connection existed with regard to Honda, Volkswagen or Nissan.
The parent manufacturers reason that no substantial connection exists in this matter because the gravamen of the plaintiffs' complaint is that they withheld products from the stream of commerce while their contacts with California are based on the indirect placement of products in the *274 stream of commerce. Typically, specific jurisdiction exists because a defendant places rather than withholds its products into the forum state's stream of commerce. (See In re New Motor Vehicles Canadian Export, supra, 307 F.Supp.2d at p. 154, fn. 8.) In this case, the plaintiffs challenge the parent manufacturers' alleged efforts to withhold motor vehicles sold in Canada from California consumers in violation of California antitrust laws. The injury alleged to have been caused is the higher price of Honda, Volkswagen and Nissan motor vehicles in California when compared to the price of similar vehicles that  according to the allegations of the plaintiffs' complaint  are illegally banned from export to California. If these exports had been permitted, the plaintiffs reason, the price of California new motor vehicles would have been lower in order to compete with Canadian exports.
We find that the plaintiffs proved a substantial connection between the defendants' activity of selling some motor vehicles in California and the alleged price-fixing conspiracy. (See Snowney, supra, 35 Cal.4th at p. 1068, 29 Cal.Rptr.3d 33, 112 P.3d 28; Bridgestone, supra, 99 Cal.App.4th at p. 774, 121 Cal.Rptr.2d 673.) While companies can withhold products from a forum state's market to avoid being subject to jurisdiction, the act of withholding some products and sending others into the forum may constitute activity directed toward the forum state sufficient to support an exercise of personal jurisdiction. (See In re New Motor Vehicles Canadian Export, supra, 307 F.Supp.2d at p. 154, fn. 8 [finding jurisdiction in federal antitrust case against Canadian manufacturers based on lost discount distribution channel from Canada to United States].) This is precisely what the plaintiffs allege that the parent manufacturers did in this case  withheld lesser-priced vehicles from the California market while selling virtually identical higher-priced motor vehicles in this state. Under the circumstances of this lawsuit, we find that the defendants' indirect placement of motor vehicles into the stream of commerce in California is sufficiently related to the allegations of the complaint that a parent manufacturer such as Nissan, Volkswagen and Honda could theoretically be subject to the specific jurisdiction of California courts in an appropriate case. (See, e.g., Snowney, supra, 35 Cal.4th at pp. 1067-1070, 29 Cal.Rptr.3d 33, 112 P.3d 28.) We find that the trial court's contrary reasoning was in error.
That said, we note that on appeal, we do not review the reason s why the trial court ruled as it did, but consider the validity of its ruling. If a trial court's ruling is correct, we will affirm, even if its reasoning was flawed. (See Bridgestone, supra, 99 Cal.App.4th at p. 774, 121 Cal. Rptr.2d 673.) Having struggled to articulate why the assertion of jurisdiction seems problematical to us, we appreciate the difficulty that the trial court had in setting out the reasoning for its own rulings.
To us, the difficulty for the plaintiffs in this matter is not connecting the parent manufacturers' California activities with the allegations of the lawsuit, but connecting these three parent manufacturers themselves to the alleged conspiracy. To prevail on their jurisdictional claims, the plaintiffs must present evidence to support a finding that California may exercise jurisdiction over these particular defendants. (See Sonora, supra, 83 Cal.App.4th at p. 540, 99 Cal.Rptr.2d 824.) Typically, the plaintiff need not establish the merits of the complaint in order to prove jurisdiction. (Magnecomp Corp. v. Athene Co. (1989) 209 Cal.App.3d 526, 533, 257 Cal. Rptr. 278.) However, when personal jurisdiction is asserted on the basis of a nonresident *275 defendant's alleged activities in this state, facts relevant to jurisdiction may also bear on the merits of the case. (Regents of University of New Mexico v. Superior Court, supra, 52 Cal.App.3d at p. 970 fn. 7, 125 Cal.Rptr. 413.) Jurisdictional facts shown must pertain to each nonresident defendant individually, even in an alleged conspiracy. (Kaiser, supra, 86 Cal.App.3d at p. 900, 150 Cal.Rptr. 615; see St. Joe Paper Co. v. Superior Court (1981) 120 Cal.App.3d 991, 997-998, 175 Cal.Rptr. 94, cert. den. (1982) 455 U.S. 982, 102 S.Ct. 1489, 71 L.Ed.2d 691 [no evidence in Kaiser that nonresident defendants had engaged in conspiracy with intent to cause tort in California].)
In a case such as the one before us, we find it appropriate to require the plaintiffs to demonstrate some evidence tending to connect each parent manufacturer to the alleged conspiracy. They did not do so with regard to the three parent manufacturers before us on appeal. The plaintiffs have been unable to show any evidence of an act furthering the alleged conspiracy committed by any of these three parent manufacturers  neither an act occurring in this state nor one that occurred outside the state that was directed toward California consumers. The plaintiffs admitted in the trial court that they had no evidence that these three parent manufacturers  Honda, Volkswagen and Nissan  even monitored export activity from Canada to California. As the plaintiffs have no evidence that these three parent manufacturers actually participated in the alleged conspiracy, we find that they did not demonstrate a sufficient connection between these defendants and the allegations of the lawsuit to support a finding of personal jurisdiction over these nonresident defendants.[7]
Plaintiffs protest that they should not be required to prove their case during this jurisdictional stage of the proceedings. (See pt. III.D., ante.) We do not find that they must do so. We only require that they offer some evidence that persuades the trial court that there is reason to believe that each of the named nonresident defendants might be linked to the alleged conspiracy, sufficient to allow us to fairly call Honda, Volkswagen and Nissan before California courts to answer the allegations in the plaintiffs' complaint. This evidence need not be strong or conclusive, nor need the plaintiffs prove each element of their causes of action. However, we find that they must provide some evidence allowing the trial court  as finder of fact on jurisdictional issues  to conclude that these particular named defendants were involved in the alleged conspiracy. (See Regents of University of New Mexico v. Superior Court, supra, 52 Cal.App.3d at p. 970 fn. 7, 125 Cal.Rptr. 413.)
In the matter before us, the plaintiffs did not offer the slightest evidence that these three parent manufacturers were involved in the alleged conspiracy. In these circumstances, we find that for a California court to exercise specific jurisdiction over the foreign parent manufacturers Honda, Volkswagen or Nissan would violate federal due process standards and our own long-arm statute.[8] (See, e.g., Snowney, *276 supra, 35 Cal.4th at pp. 1061-1062, 29 Cal.Rptr.3d 33, 112 P.3d 28; see also Code Civ. Proc., § 410.10.)

B. Representative Services

The plaintiffs also contend that these three nonresident defendants are subject to general jurisdiction in California under the representative services doctrine. The trial court concluded that the plaintiffs did not meet their burden of proving that California had personal jurisdiction over the parent manufacturers pursuant to this jurisdictional theory. It found that the relationships between Honda, Volkswagen and Nissan and their local subsidiaries did not permit application of the representative services doctrine. Thus, the trial court granted the parent manufacturers' motions to quash service of summons.
Generally, a parent corporation is not subject to our state court jurisdiction simply because its wholly owned subsidiary is properly subject to jurisdiction in California courts.[9] (Sonora, supra, 83 Cal.App.4th at p. 553, 99 Cal.Rptr.2d 824; Northern Natural Gas Co. v. Superior Court (1976) 64 Cal.App.3d 983, 991, 134 Cal.Rptr. 850.) However, under the representative services doctrine, the contacts of a local agent through which a foreign principal acts may be imputed to that foreign defendant. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 797, 30 Cal. Rptr.3d 407; see Sonora, supra, 83 Cal.App.4th at p. 554, 99 Cal.Rptr.2d 824; Northern Natural Gas Co. v. Superior Court, supra, 64 Cal.App.3d at p. 994, 134 Cal.Rptr. 850.) In such circumstances, agency principles apply to confer general jurisdiction in California over a nonresident defendant corporation. (Paneno v. Centres for Academic Programmes Abroad Ltd., supra, 118 Cal.App.4th at p. 1455, 13 Cal.Rptr.3d 759.)
For purposes of the representative services doctrine, agency is established when the evidence demonstrates that the alleged principal had the right to control the activities of the alleged agent. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 797, 30 Cal.Rptr.3d 407; see Kim v. Sumitomo Bank (1993) 17 Cal.App.4th 974, 983, 21 Cal.Rptr.2d 834.) The plaintiffs must show more than mere ownership or control[10] of a local subsidiary by a foreign parent corporation. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 797, 30 Cal.Rptr.3d 407; Sonora, supra, 83 Cal.App.4th at p. 540, 99 Cal.Rptr.2d 824; see 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 167, subd. (1), p. 730.) The foreign company must exercise a highly pervasive degree of control over the local subsidiary. It must veer into management and day-to-day operations of the local subsidiary in order to apply the representative services doctrine. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 797, 30 Cal.Rptr.3d 407; see DVI, Inc. v. Superior Court (2002) 104 Cal.App.4th 1080, 1097, 128 Cal.Rptr.2d 683; Sammons Enterprises, Inc. v. Superior Court (1988) *277 205 Cal.App.3d 1427, 1434, 253 Cal.Rptr. 261.) An exercise of general jurisdiction under the representative services doctrine is only appropriate if the control of the subsidiary is so pervasive and continual that the local subsidiary functions as an agent or instrumentality of the parent corporation, despite the maintenance of separate corporate structures.[11] (F. Hoffman-La Roche, supra, 130 Cal.App.4th at pp. 797-798, 30 Cal.Rptr.3d 407; Sonora, supra, 83 Cal.App.4th at p. 541, 99 Cal.Rptr.2d 824.) In this situation, the parent corporation's control over the local subsidiary is over and above that which is to be expected as an incident of ownership, reflecting the parent's purposeful disregard of the local entity's separate corporate existence. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 798, 30 Cal.Rptr.3d 407; Sonora, supra, 83 Cal.App.4th at p. 542, 99 Cal.Rptr.2d 824.)
The representative services doctrine does not support an exercise of general jurisdiction unless there is evidence that the subsidiary corporation performed a function that was compatible with and assisted the parent corporation in the pursuit of the parent corporation's own business. (DVI, Inc. v. Superior Court, supra, 104 Cal.App.4th at p. 1094, 128 Cal.Rptr.2d 683; Sonora, supra, 83 Cal.App.4th at p. 543, 99 Cal.Rptr.2d 824.) It is rare for a court to treat a parent and subsidiary as one entity for purposes of jurisdiction, unless a showing of fraud or injustice is made. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 797, 30 Cal.Rptr.3d 407; see Calvert v. Huckins (E.D.Cal.1995) 875 F.Supp. 674, 678 [alter ego case].) The presumption of corporate separateness must be overcome by clear evidence that the parent corporation actually controls the subsidiary's activities. (Calvert v. Huckins, supra, at p. 678.)
Clearly, a plaintiff asserting the application of the representative services doctrine must demonstrate strong evidence of pervasive control of a local subsidiary by a parent manufacturer. In this matter, the plaintiffs' evidence did not rise to this high level. General jurisdiction will not lie when the parent is a true holding company, the business of which is not operations but passive investment in a subsidiary company. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at pp. 798, 802, 30 Cal.Rptr.3d 407; see Sonora, supra, 83 Cal.App.4th at pp. 543-545, 99 Cal.Rptr.2d 824.) Investment alone is not a sufficient ground to exercise general jurisdiction, even if the foreign corporation could have chosen to simply run the local business itself. To hold otherwise would ignore federal constitutional law. (Sonora, supra, 83 Cal.App.4th at p. 545, 99 Cal.Rptr.2d 824.)
The local subsidiary companies selling and distributing Nissan, Volkswagen and *278 Honda motor vehicles are owned  either directly or indirectly  by the three parent manufacturers.[12] The parent manufacturers' representatives have submitted declarations stating that the three foreign companies do not exercise any day-to-day control over the local subsidiaries. In the face of this evidence, the plaintiffs offer no contrary evidence at all  certainly not evidence of the kind of excessive control that must be demonstrated to warrant application of the representative services doctrine and impute general jurisdiction from the local subsidiaries to the parent manufacturers. As the plaintiffs demonstrated no constitutionally permissible basis of general or specific jurisdiction over the parent manufacturers by California courts, the trial court properly granted the motions to quash service of summons that were filed by Honda, Volkswagen and Nissan.

V. JURISDICTION OVER TRADE ASSOCIATION

A. Effects Test

On appeal, the plaintiffs also contend that two theories permit California courts to exercise specific jurisdiction[13] over CADA. With regard to this trade organization, the plaintiffs first argue that specific jurisdiction exists pursuant to the so-called "effects test" such that CADA may properly be brought to answer into a California court.
When determining whether California courts have specific jurisdiction over a nonresident defendant, the question of whether the defendant purposefully availed itself of the benefits of conducting activities in this state focuses on that defendant's intent. A plaintiff may establish purposeful availment based on the effects of the defendant's out-of-state conduct in this state. (Pavlovich, supra, 29 Cal.4th at pp. 269-270, 127 Cal.Rptr.2d 329, 58 P.3d 2; see Calder v. Jones (1984) 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (Calder).) The plaintiffs point to deposition testimony of CADA's president stating that he understood that the Canadian export ban precluded California consumers from purchasing a Canadian motor vehicle. They reason that this evidence satisfies their burden of proof of jurisdiction under the effects test. In essence, they argue that foreseeability alone is sufficient to establish jurisdiction under the effects test.
The plaintiffs are incorrect. Both federal and state courts have held that mere foreseeability  that the defendant knew or should have known that its intentional acts could cause harm in this state  is not sufficient to establish jurisdiction under the effects test. Instead, the plaintiff must point to contacts demonstrating that the defendant expressly aimed or targeted its tortious conduct at our state. (See Calder, supra, 465 U.S. at p. 789, 104 S.Ct. 1482; Pavlovich, supra, 29 Cal.4th at pp. 270-273, 127 Cal.Rptr.2d 329, 58 P.3d 2; DVI, Inc. v. Superior Court, supra, 104 Cal.App.4th at p. 1098, 128 Cal.Rptr.2d 683; see also Kaiser, supra, 86 Cal.App.3d at p. 904, 150 Cal.Rptr. 615.) In order for California courts to properly exercise our specific jurisdiction, this state must have been the focal point of the tort and the brunt of the harm must *279 have been felt here. (See Calder, supra, 465 U.S. at p. 789, 104 S.Ct. 1482; Pavlovich, supra, 29 Cal.4th at p. 270, 127 Cal. Rptr.2d 329, 58 P.3d 2.)
In this case, the plaintiffs cite no evidence  and we have found none  suggesting that CADA representatives expressly aimed or targeted the allegedly tortious conduct  encouraging prevention of Canadian exports to California so as to cause our state's consumers to pay higher prices for motor vehicles  at California consumers. If there is conflicting evidence about whether a nonresident defendant committed acts or omissions outside the state, intending to cause a tortious effect in California, then we apply the substantial evidence rule to determine the validity of the trial court's finding of fact. On conflicting evidence, we must support the trial court's resolution of the conflict, including any implied finding that acts and omissions were not committed outside the state with an intent to cause tortious effects in California. (See, e.g., Kaiser, supra, 86 Cal.App.3d at p. 904, 150 Cal.Rptr. 615.)
A defendant's knowledge that tortious conduct might cause harm in California is certainly relevant to the inquiry before us, but that knowledge alone is not sufficient to establish express aiming at California. (Pavlovich, supra, 29 Cal.4th at pp. 275-276, 278, 127 Cal.Rptr.2d 329, 58 P.3d 2; see Calder, supra, 465 U.S. at pp. 789-790, 104 S.Ct. 1482.) The trial court impliedly found that CADA did not target its allegedly tortious conduct at California consumers. As such, we find that the trial court properly determined that California courts cannot exercise personal jurisdiction over this Canadian trade organization without violating due process.[14] (See, e.g., Pavlovich, supra, 29 Cal.4th at p. 278, 127 Cal. Rptr.2d 329, 58 P.3d 2; see also Calder, supra, 465 U.S. at p. 789, 104 S.Ct. 1482.)

B. California Acts in Furtherance of Conspiracy

In their final claim of California jurisdiction, the plaintiffs argue that our courts have specific jurisdiction over CADA because it furthered the alleged conspiracy while present in this state. California courts may properly exercise personal jurisdiction over one who commits a tort or who causes a tort to be committed within this state. (Kaiser, supra, 86 Cal.App.3d at pp. 900-901, 150 Cal.Rptr. 615; see Judicial Council of Cal. com., reprinted at 14A West's Ann.Code Civ. Proc. (2004 ed.) foll. § 410.10, pp. 379-381; see also Rest.2d., Conf. of Laws (1988 supp.) § 36, com. c, p. 45.) The trial court found that the plaintiffs' evidence of CADA's California activities lacked a logical nexus sufficient to satisfy their burden of proof of jurisdiction. Thus, it granted CADA's motion to quash service of summons.
On appeal, the plaintiffs contend that because CADA representatives attended a trade meeting in California in February 2003, California courts may properly exercise specific jurisdiction over CADA. In the trial court, the plaintiffs produced some evidence in support of their claim that CADA committed a tortious act in this state. The trial court viewed handwritten notes taken by CADA President Richard Gauthier at a February 2003 American trade association meeting in San *280 Francisco. Gerry Little  then serving as Chairman of CADA  also attended this "impromptu meeting . . . put together by [its American counterpart]." No specific topic or agenda had been identified before the meeting. When asked at that meeting to identify areas of concern, Gauthier made brief mention of export sales. He raised the topic of Canadian exports of motor vehicles into the United States as an issue of concern to Canadians and Americans alike. After Gauthier reviewed his handwritten notes of the meeting, he testified at his deposition that the recital of his list of areas of concern to CADA  of which export issues was one  took no more than five minutes.
The trial court concluded that CADA's February 2003 activity in California  even if CADA representatives expanded on the issue of exports  could not reasonably be interpreted to indicate an agreement or any other substantial element of conspiracy. It found this evidence of CADA's California contacts to be insufficient to establish a logical nexus between CADA and the alleged conspiracy. It concluded that the plaintiffs had failed to meet their burden of proof and thus, granted CADA's motion to quash service of summons.
The plaintiffs reason that because the federal district court found jurisdiction over CADA in the related federal action, the trial court was compelled to do so in this case as well. (See In re New Motor Vehicles Canadian Export, supra, 307 F.Supp.2d at pp. 152-153.) In a case in which CADA representatives attended a single March 2002 meeting in New York at which a discussion of export sales occurred, a federal court denied CADA's motion to dismiss for lack of personal jurisdiction. The plaintiffs in that case had alleged that at this meeting, CADA participated in a conspiracy to prevent a discount distribution channel from operating in the United States, thus violating federal antitrust laws. (Id. at pp. 147, 152-153.)
The federal district court accepted the plaintiffs' evidence as true for the purposes of jurisdictional analysis and inferred from it that CADA had made an agreement to help withhold Canadian vehicles from the United States market. It found this activity in the United States to be significant activity related to the litigation before the federal court. It also noted that CADA regularly participated in meetings and other events in this country. On the basis of this evidence, the federal court found that it had jurisdiction over CADA. (In re New Motor Vehicles Canadian Export, supra, 307 F.Supp.2d at p. 153.)
Our comparison of the evidence of CADA participation found by the federal court with that proffered in the case before us satisfies us that the federal court's ruling is distinguishable. In the federal matter, a federal district court judge concluded that it had jurisdiction over CADA because in March 2002, its representatives came to the United States, sought out their American counterparts, invited them to a meeting, discussed export sales at that meeting, and made an agreement to help prevent further export of Canadian vehicles to the United States. (See In re New Motor Vehicles Canadian Export, supra, 307 F.Supp.2d at p. 152.) In our case, the evidence establishes much less  that CADA representatives attended an unplanned, introductory meeting in San Francisco without an agenda at which they made brief mention of export sales as one of CADA's list of issues of concern. There is no evidence that any discussion  extensive or otherwise  occurred on this subject. There was no evidence that CADA conducted the kind of "informational meeting" that was held in New York, nor that it *281 entered into any agreement to promote the export ban.[15] (See ibid.)
Another key distinction between these two cases turns on the different markets represented by California and the United States as a whole. The evidence in the federal case allowed the federal district court to conclude that CADA initiated contact in New York with its American counterpart  that is, with a national organization. There is no evidence that a comparable California organization even exists, much less that CADA representatives had informational meetings with its representatives such that this contact with California would support a finding of specific jurisdiction.
The record in our appeal also demonstrates the relative strength of CADA's contacts with the United States and highlights the comparative weakness of CADA's contacts with California. Our record on appeal shows that CADA reported on the March 2002 meeting in New York in its May 2002 newsletter. In that communication, CADA Chairman John Carmichael announced that CADA would not support known exporters and that it was evaluating strategies for dealing with price differential issues. An August 2002 confidential letter from CADA to dealers reported that CADA and motor vehicle manufacturers had agreed to cooperate on the export sales issues, raising the possibility of chargebacks imposed by Canadian manufacturers and the loss of dealer franchises. At CADA's instigation, the parties were developing practical guidelines to assist dealers in preventing sales to exporters. The letter also supported the nationwide use of a nonexport clause in the sales contracts that was then being used by some motor vehicle dealers in one Canadian province.[16] It also advised dealers that CADA and its American counterpart were working together on the export issues. CADA heralded this cooperative attempt to "pursue an industry solution" as a "great starting point to a united campaign against the unauthorized exporting of new vehicles" in the United States. This evidence is much stronger in support of a finding of personal jurisdiction than CADA's mere mention of export issues at a trade meeting in San Francisco in February 2003.
Finally, the plaintiffs argue that the trial court should have considered the evidence of the San Francisco meeting in the context of the evidence of the March 2002 New York meeting and of other manufacturers' apparent participation in the alleged conspiracy. If it had done so, they reason, it would have drawn the inference that they sought  that CADA's activities in California constituted an act in furtherance of the conspiracy. The record suggests otherwise. In fact, the trial court had all this evidence before it, but chose not to draw the inference that the plaintiffs suggested. As we have ruled, the trial court acted within its proper factfinding authority when it chose not to draw this inference. (See pt. III.D., ante.)
We conclude that the plaintiffs did not establish sufficient California acts in furtherance of the alleged conspiracy such that our state courts could properly exercise specific jurisdiction over CADA on this basis. Thus, the trial court properly *282 granted CADA's motion to quash service of summons.[17]

VI. FURTHER DISCOVERY
Alternatively, the plaintiffs contend the trial court erred by denying their request for a continuance before ruling on three of the four motions to quash service of summons. They urge us to find that they should have been allowed more time to obtain jurisdictional discovery from Honda, Volkswagen and Nissan relevant to the effects test.[18] (See generally pt. V.A., ante.) In the trial court, the plaintiffs had opposed these motions to quash filed by the parent manufacturers inter alia by seeking a continuance to allow them to conduct further discovery of jurisdictional facts. By December 2004, the trial court's tentative view was that it should permit such additional discovery. However, after hearing on the motions to quash service of summons, it denied the plaintiffs' request for time to conduct additional discovery. At that hearing, the trial court had twice asked the plaintiffs to offer facts that would justify a reasonable belief that additional relevant jurisdictional evidence existed and could be gathered if a continuance were granted. The plaintiffs were unable to make such an offer of proof, prompting the trial court to deny their request for further jurisdictional discovery against the three parent manufacturers on the effects test[19] means of demonstrating purposeful availment.[20]
A plaintiff attempting to assert jurisdiction over a nonresident defendant is entitled to an opportunity to conduct discovery of the jurisdictional facts necessary to sustain its burden of proof. (Magnecomp Corp. v. Athene Co., supra, 209 Cal.App.3d at p. 533, 257 Cal.Rptr. 278.) In order to prevail on a motion for a continuance for jurisdictional discovery, the plaintiff should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction. (See, e.g., Beckman v. Thompson (1992) 4 Cal.App.4th 481, 486-487, 6 Cal.Rptr.2d 60.) The plaintiffs in this matter did not do so. We have already rejected their related claim that the trial court should have drawn an inference from evidence implicating other alleged conspirators who were also motor vehicle parent manufacturers. (See pt. III.D., ante.) Even when the underlying complaint alleges a conspiracy, the plaintiff must still offer evidence tending to support the existence of personal jurisdiction over each named nonresident *283 defendant. (See Kaiser, supra, 86 Cal.App.3d at p. 901, 150 Cal.Rptr. 615; see pt. IV.A.3., ante.) The plaintiffs have not done so.
A ruling on a motion to continue in order to allow additional time to discover jurisdictional facts lies in the trial court's discretion. On appeal, we will not reverse the trial court's ruling unless we find a manifest abuse of that discretion. (Beckman v. Thompson, supra, 4 Cal.App.4th at p. 487, 6 Cal.Rptr.2d 60.) The plaintiffs failed to show that further discovery was likely to lead to the production of evidence establishing jurisdiction against Honda, Volkswagen, or Nissan. As such, we are satisfied that the trial court did not abuse its discretion by rejecting the plaintiffs' request for a continuance to conduct further jurisdictional discovery against the three parent manufacturers.

VII. REMITTITUR
California's long-arm statute does not extend long enough to reach the four nonresident foreign defendants that the plaintiffs served with summons in the underlying action. Additional discovery is not sufficiently likely to produce evidence supporting jurisdiction to warrant a further continuance to establish additional jurisdictional facts. The requests of Honda and Volkswagen for judicial notice are denied. The trial court's order granting the nonresident defendants' motions to quash service of summons is affirmed.
SEPULVEDA and RIVERA, JJ., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.
[1] The plaintiffs before us on appeal are George Bell, Wei Cheng, Laurance de Vries, Joshua Chen, Jason Gabelsberg, Ross Lee, Jeffrey M. Lohman, Christine Nichols, Local 588 of the United Food & Commercial Workers Union, Estelle Weyl, Michael Wilsker and W. Scott Young. Each alleges an injury caused by one or more of the defendants. For convenience, this opinion refers to these plaintiffs as "plaintiffs."
[2] The plaintiffs alleged that the only differences between motor vehicles intended for use in the United States and Canada are their speedometers, odometers, and daytime running lamps.
[*] See footnote *, ante.
[6] Honda, Volkswagen and Nissan urge us to conclude that more than merely placing their products in the stream of commerce in California is required to establish purposeful availment. The case law that they rely on is part of a United States Supreme Court decision joined in by only a plurality of four justices. (See Asahi Metal Industry Co. v. Superior Court, supra, 480 U.S. at pp. 105, 108, 112, 107 S.Ct. 1026 [plurality decision].) As the United States Supreme Court based its ruling on other grounds, the cited aspect of Asahi is dicta and thus, is not controlling in the case before us. (See Bridgestone, supra, 99 Cal.App.4th at pp. 776-777, 121 Cal. Rptr.2d 673.)
[7] The plaintiffs would require us to infer from the facts before the trial court that Honda, Volkswagen and Nissan actually participated in this conspiracy. The trial court declined to draw this inference from evidence suggesting that other parent manufacturers had conspired to sell motor vehicles at an inflated price in California. As we have explained, we cannot overturn a trial court's contrary factual finding that is supported  as it is here  by substantial evidence, nor may we compel the trial court to make such a factual finding if it chooses not to draw such an inference. (See pt. III.D., ante.)
[8] In light of this conclusion, we need not consider the plaintiffs' claim that an exercise of specific jurisdiction over these parent manufacturers would comport with fair play and substantial justice.
[9] The parties do not dispute that the American subsidiaries of Honda, Volkswagen and Nissan are subject to the jurisdiction of California courts in this matter.
[10] In this context, the term "control" means the degree of direction and oversight normal and expected from the status of ownership. It comprehends common characteristics such as interlocking directors and officers, consolidated reporting and shared professional services. (F. Hoffman-La Roche, supra, 130 Cal.App.4th at p. 797, 30 Cal.Rptr.3d 407; Sonora, supra, 83 Cal.App.4th at pp. 540-541, 548-550, 99 Cal.Rptr.2d 824; see DVI, Inc. v. Superior Court, supra, 104 Cal.App.4th at p. 1095, 128 Cal.Rptr.2d 683.)
[11] The plaintiffs cite federal cases holding that they need not show that a parent company exercised day-to-day control over a local subsidiary in order to establish general jurisdiction over the parent corporation on the basis of agency  a basis related to the representative services test. (See, e.g., Modesto City Schools v. Riso Kagaku Corp. (E.D.Cal. 2001) 157 F.Supp.2d 1128, 1134.) It is true that the federal district court judge in Modesto declined to find that parental control was an element of the test for agency jurisdiction, preferring a more nuanced jurisdictional analysis. (Ibid.) However, the federal court based its ultimate finding of agency jurisdiction on evidence of facts such as overlapping corporate officials and the extent to which the parent was informed of the subsidiary's activities. (See id. at p. 1135.) As many of these factors would lend themselves to a finding of parent company control of the local subsidiary under the approach used by California courts, we conclude that the distinctions between those cases and the cited federal cases are less significant than would appear from a cursory reading of these varied authorities.
[12] Volkswagen of America is a subsidiary of a German holding company that is itself a subsidiary of Volkswagen's German parent company.
[13] The plaintiffs do not contend that there is a basis for general jurisdiction over CADA. (See, e.g., Snowney, supra, 35 Cal.4th at p. 1062, 29 Cal.Rptr.3d 33, 112 P.3d 28; Vons, supra, 14 Cal.4th at p. 446, 58 Cal.Rptr.2d 899, 926 P.2d 1085.)
[14] To the extent that this issue turns on the trial court's factual findings on conflicting evidence, we note that in certain circumstances, a trial court may reasonably infer that an act done outside of California may have been intended to cause and did cause an effect in this state. (Sibley v. Superior, supra, 16 Cal.3d at p. 446, 128 Cal.Rptr. 34, 546 P.2d 322.) However, a trial court cannot be compelled to draw an inference of jurisdiction if the facts are conflicting on this issue. (See pt. III.D., ante.)
[15] In our case, the trial court concluded that even if CADA representatives had expanded on the issue of exports at the San Francisco meeting, this conduct could not reasonably be interpreted to indicate an agreement or any other substantial element of conspiracy.
[16] None of the nonexport agreements provided as evidence involved the sale of Honda, Volkswagen or Nissan vehicles.
[17] In light of this conclusion, the plaintiffs' contention that an exercise of specific jurisdiction would be fair is necessarily moot.
[18] Apparently, the plaintiffs do not raise this contention with respect to CADA.
[19] A plaintiff may prove purposeful availment by establishing the effects of the defendant's out-of-state conduct in this state. (Pavlovich, supra, 29 Cal.4th at pp. 269-270, 127 Cal. Rptr.2d 329, 58 P.3d 2; see Calder, supra, 465 U.S. at p. 789, 104 S.Ct. 1482; see also pt. V.A., ante.) Under this theory of jurisdiction, there must be evidence that the defendant expressly aimed or targeted its tortious conduct at our state. (See Calder, supra, 465 U.S. at p. 789, 104 S.Ct. 1482; Pavlovich, supra, 29 Cal.4th at pp. 270-273, 127 Cal. Rptr.2d 329, 58 P.3d 2; DVI, Inc. v. Superior Court, supra, 104 Cal.App.4th at p. 1098, 128 Cal.Rptr.2d 683; see also Kaiser, supra, 86 Cal.App.3d at p. 904, 150 Cal.Rptr. 615.)
[20] We note that the plaintiffs proved to our satisfaction that these three parent manufacturers met the purposeful availment prong. (See pt. IV.A.2., ante.) However, as the plaintiffs suggest that the evidence they would seek would demonstrate that the parent manufacturers targeted California by their export policies, we infer that this evidence might also demonstrate the missing prong of their stream of commerce test  evidence of the actual participation of the parent manufacturers in the alleged conspiracy.