Filed 2/17/15  Hamada v. Valgardson CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LEIKO HAMADA et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>RICHARD VALGARDSON,<br><br>Defendant and Respondent. | B252714<br><br>(Los Angeles County<br>Super. Ct. No. SC120488) |

APPEAL from an order of the Superior Court of Los Angeles County, Allan J. Goodman, Judge.  Affirmed.

Koletsky, Mancini, Feldman & Morrow, and Susan L. Caldwell for Plaintiffs and Appellants Leiko Hamada and Julian Mehra.

No appearance by Respondent.

————————————

Leiko Hamada and her adult son, Julian Mehra (collectively the Hamada parties), appeal from the order entered after the trial court granted Richard Valgardson's motion to quash the summons and complaint served on him at his residence in Utah. The trial court found the Hamada parties had failed to meet their burden to establish Valgardson had sufficient minimum contacts with California to permit personal jurisdiction over him. The Hamada parties also challenge the trial court's denial of their motion "to vacate and/or for reconsideration of" the order quashing service on Valgardson. We affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Parties and the Modular Home Contract*

Valgardson is the sole owner, president and chief executive officer of Irontown Housing Company, Inc. (IHC), a Utah corporation in the business of manufacturing modular, factory-built housing. In 2011 Hamada entered into a contract with IHC to build a modular home and to perform various services associated with affixing the home to real property Hamada owned in Santa Monica. The modular home was to be used by Mehra as his personal residence. The contract was signed by Hamada, on her own behalf, and by Valgardson's son, Kam Valgardson, IHC's vice president of operations, on behalf of IHC.

### 2. *This Lawsuit*

On April 3, 2013 the Hamada parties sued, among others, IHC, Valgardson and Kam Valgardson—the Valgardsons were sued both individually and as alter egos of IHC—alleging causes of action against each of them for breach of contract, fraud and related statutory claims. The Hamada parties alleged IHC performed substandard work resulting in an unfinished and uninhabitable home. They also alleged IHC and the Valgardsons had committed fraud by, among other things, representing that IHC was

---

[1]     The Hamada parties also appealed from the trial court's order granting Kam Valgardson's separate motion to quash the summons and complaint directed to him in his personal capacity. After receiving notice of Kam Valgardson's discharge from bankruptcy in the federal district court, we invited the Hamada parties to show cause why the appeal as to Kam Valgardson should not be dismissed. We received no response and on December 30, 2014 dismissed the Hamada parties' appeal as to Kam Valgardson.

licensed as a general contractor in California and using a false California contractor's license number on the contract.  In fact, they alleged, IHC was not licensed in California: Richard Valgardson was a licensed general contractor in California solely in his individual capacity and unlawfully used his license while the contract was being performed to further, or at the very least prevent the Hamada parties from discovering, the fraud.

3. *Valgardson's Motion To Quash Service of the Summons and Complaint*

Valgardson specially appeared in the action and moved to quash service of the summons and complaint, arguing the court lacked personal jurisdiction over him in his individual capacity.[2]  In a signed declaration submitted with his motion, Valgardson stated he had been a resident of Utah for 66 years; had never lived in California or maintained an office in California; and had never advertised in his personal capacity in California, owned real property in California or paid personal income taxes in California. Valgardson did not mention whether he was a California licensed general contractor.

The Hamada parties opposed Valgardson's motion, arguing Valgardson's work on their contract on behalf of IHC and his actions relating to it constituted sufficient contact to permit the court to assert specific personal jurisdiction over him, particularly with respect to their claims arising from the use of his individual contractor's license to further a fraud against them.  As evidence to support their position, the Hamada parties submitted the declaration of their counsel, Susan Caldwell, who attested to the following: IHC routinely directed its advertising to California residents as reflected on its website; Valgardson filed an affidavit in May 2013 with a Utah court in connection with a related lawsuit he had initiated there against Hamada, stating under penalty of perjury, "I was at all times, prior to, during contract development, planning fabrication and installation of the Leiko Hamada factory-built house, personally a Utah General Contractor and a California-licensed General Contractor. . . .  [¶]  . . . I personally supervised, both at our

2    IHC has not disputed jurisdiction.  It appeared in the action and filed a petition to compel arbitration pursuant to an arbitration provision in the contract.  That petition was granted by the trial court and is not before us.

factory in Spanish Fork, Utah, and in the follow-on transportation, set and stitch phases, all elements of the Hamada job." Caldwell also included with her declaration "true and correct" print-outs from the website of the Contractors State Licensing Board (CLSB) confirming (i) IHC was not a licensed general contractor in California at the time of the contract; (ii) the California license number on the contract purporting to be IHC's did not exist; and (iii) Valgardson was licensed in his personal capacity with the CLSB under a different license number. Caldwell also included a letter to her from CLSB's custodian of records attesting under penalty of perjury that Valgardson was licensed as a general contractor in California during the relevant time period; IHC was not licensed; and the CLSB had no record of any individual or entity with the purported California license number listed in the contract. Finally, Caldwell included what she attested to be "true and correct copies" of emails from Kam Valgardson to Hamada's architect responding to the architect's request for IHC's general contractor's license number. Kam Valgardson provided the architect with Valgardson's personal California general contractor's license number in an email the architect then forwarded to Hamada with instructions to use the number to complete assessor forms required for new construction in California.

In his reply papers Valgardson argued the evidence the Hamada parties had supplied related solely to IHC's contacts with California, not Valgardson's personally. He also objected to all evidence Caldwell had cited in her declaration, arguing Caldwell lacked any personal knowledge of the contract, the contract negotiations and Valgardson's actions as to which she purported to testify. Valgardson also objected on the ground the documents she provided constituted inadmissible hearsay.

In a written tentative opinion filed prior to the hearing, the court indicated it intended to sustain each of Valgardson's objections to Caldwell's declaration, observing Caldwell was "manifestly not a person who ha[d] first-hand knowledge of the facts set out" in her declaration. On September 23, 2013, the morning of the hearing on the motion to quash, Hamada filed her own declaration purporting to cure the evidentiary deficiencies identified in Valgardson's objections and in the court's tentative ruling. In particular, Hamada testified she had personal knowledge of the contract and the emails as

4

to which Caldwell had purported to testify. She explained Kam Valgardson had supplied Valgardson's California general contractor's license number to Hamada's architect in an email exchange the architect then forwarded to Hamada. Hamada attached the emails to her declaration.

At the September 23, 2013 hearing the trial court refused to consider Hamada's declaration, concluding it was substantially and inexcusably untimely having been filed the morning of the hearing and only in response to the court's tentative ruling. The court then sustained each of Valgardson's objections to Caldwell's declaration and, without evidence of Valgardson's use of his individual general contractor's license to perpetrate a fraud or any other evidence of contact with California in his personal capacity, ruled the evidence pointed solely to IHC's contacts with California, not Valgardson's individually; and the Hamada parties had failed to meet their burden. On October 1, 2013 the court entered an order granting Valgardson's motion to quash service of the summons and complaint served on him in his individual capacity.

4. *The Hamada Parties' Motion To Vacate and Motion for Reconsideration*

On October 3, 2013 the Hamada parties moved to vacate the order granting the motion to quash pursuant to Code of Civil Procedure section 473, subdivision (b),[3] and for reconsideration pursuant to section 1008. The Hamada parties supplied an affidavit from Caldwell taking full responsibility for the objectionable declaration she had filed in opposition to the motion to quash and for the failure to file Hamada's declaration in a timely manner and argued the affidavit satisfied the requirements for mandatory relief under section 473, subdivision (b). She also argued Hamada's declaration was a "new circumstance" warranting reconsideration. On October 25, 2013 the court denied the motion.

---

[3]     Statutory references are to the Code of Civil Procedure unless otherwise indicated.

5

On November 13, 2013 the Hamada parties filed a notice of appeal from the October 1, 2013 order granting the motion to quash.[4]

## DISCUSSION

1. *Governing Law on Motion to Quash and Standard of Review*

When a specially-appearing nonresident defendant challenges personal jurisdiction by a motion to quash, the plaintiff has the burden of proving, by a preponderance of the evidence, the factual bases justifying the court's exercise of jurisdiction. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*); accord, *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 273 (*Pavlovich*). The plaintiff must provide affidavits and other competent evidence of jurisdictional facts and cannot simply rely on allegations in an unverified complaint. (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 110.) If the plaintiff meets this burden, "it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. [Citation.] When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. [Citation.] When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record." (*Vons*, at p. 449, accord, *Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 17 (*Burdick*).)

---

4    An order granting a motion to quash is an appealable order (§ 904.1, subd. (a)(3)); and the order denying the motion for reconsideration, although not identified in the notice of appeal, is nonetheless encompassed by that notice. (See § 1008, subd. (g) ["if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of the appeal from that order"].) We have some question whether the order denying the section 473 motion to vacate the order to quash is separately appealable, however, since it is neither an order specifically identified in section 904.1, subdivision (a), as appealable nor, unlike orders denying section 473 motions in many other contexts, "an order made after judgment made appealable by paragraph (1)" of section 904.1, subdivision (a). Nonetheless, we need not parse this issue too finely. Even assuming the order denying the motion to vacate is appealable and properly considered on its merits, for the reasons we explain, it was properly denied.

6

2. *Governing Law on Personal Jurisdiction*

"'California courts may exercise personal jurisdiction on any basis consistent with the Constitution[s] of California and the United States. (Code Civ. Proc., § 410.10.) The exercise of jurisdiction over a nonresident defendant comports with these Constitutions "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate '"traditional notions of fair play and substantial justice.""'"'" (*Snowney v. Harrah's Entertainment, Inc*. (2005) 35 Cal.4th 1054, 1061 (*Snowney*); accord, *Pavlovich, supra,* 29 Cal.4th at p. 268; *Vons, supra,* 14 Cal.4th at p. 446.)

Under the minimum contacts test personal jurisdiction may be either general or specific. (*Snowney, supra*, 35 Cal.4th at p. 1062; *Vons, supra,* 14 Cal.4th at p. 445.) General jurisdiction exists when the defendant's contacts with the forum state are so "substantial" or "continuous and systematic" as to make it consistent with traditional notions of fair play and substantial justice to subject the defendant to the jurisdiction of the forum even when the cause of action is unrelated to the defendant's contacts with the forum. (*Vons*, at p. 446; *Daimler AG v. Bauman* (2014) __ U.S. __, __ [134 S.Ct. 746, 754, 187 L.Ed.2d 624].)

Specific jurisdiction, on the other hand, requires some nexus between the cause of action and the defendant's activities in the forum state. Under well-established case law specific jurisdiction exists when (1) the defendant has "purposefully availed" himself or herself of forum benefits; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the assertion of personal jurisdiction would comport with "'fair play and substantial justice.'" (*Pavlovich. supra,* 29 Cal.4th at p. 268; accord, *Vons, supra,* 14 Cal.4th at p. 446; *Daimler AG v. Bauman, supra,* 134 S.Ct. at p. ___; *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472-473 [105 S.Ct. 2174, 85 L.Ed.2d 528].) There are no bright line rules for determining jurisdiction. "'[R]ather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.'" (*Pavlovich*, at p. 268; accord, *Burdick, supra,* 233 Cal.App.4th at p. 18.)

3. *The Trial Court Did Not Err in Granting Valgardson's Motion To Quash*

    a. *Caldwell's declaration*

The Hamada parties contend the court erred in granting the motion to quash. Although there was no evidence of Valgardson's individual "continuous and systematic" contacts with California,[5] the Hamada parties highlight the fact he individually held a general contracting license in California and had purposefully used that license to assist IHC in perpetrating a fraud. Had there been competent and timely evidence presented to that effect, we might agree the Hamada parties met their burden to establish Valgardson had sufficient minimum contacts with California to permit personal jurisdiction over him in this action specifically relating to the use of that license to commit a tort against a California resident. (See *Seagate Technology v. A.J. Kogyo Co.* (1990) 219 Cal.App.3d 696, 702 [personal jurisdiction over a corporate officer does not automatically follow from jurisdiction over the corporation; nonetheless, personal jurisdiction may be asserted over nonresident corporate officer who was primary participant in corporation's alleged tortious activity purposefully directed at the plaintiff in California]; *Taylor-Rush v. Multitech Corp.* (1990) 217 Cal.App.3d 103, 114-118 [same]; *Serafini v. Superior Court* (1998) 68 Cal.App.4th 70, 79-80 [same].)

However, the Hamada parties' argument depends entirely on the admissibility of evidence of Valgardson's use of his California license to perpetrate a fraud; and the trial court ruled the evidence was inadmissible largely due to Caldwell's failure to provide a proper foundation for, or otherwise authenticate, the evidence she presented. Significantly, apart from the single exception we discuss below, the Hamada parties do not challenge those evidentiary rulings on appeal. Thus, any claim of error in that regard has been forfeited. (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [appellant's failure to properly challenge the trial court's many evidentiary

---

[5]    All the evidence the Hamada parties identified as to continuous and systematic contact pertained to IHC and Kam Valgardson, not Valgardson individually.

8

rulings forfeits the issue on appeal]; *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1492, fn. 14 [same].)

Effectively conceding the evidentiary deficiencies in much of Caldwell's declaration, the Hamada parties argue that proper foundation and authentication of the materials attached to the declaration were not required. To the extent they suggest the threshold question of admissibility of evidence is lower in connection with a motion to quash than in other motions in light of the dispositive jurisdictional issue at stake, they misapprehend their burden. (See generally *In re Automobile Antitrust Cases I & II, supra,* 135 Cal.App.4th at p. 113 ["[R]equiring the trial court to draw an inference in favor of jurisdiction in the circumstances before us would lighten plaintiffs' burden of proof of jurisdictional facts. [Citations.] That burden of proof is grounded in constitutional guarantees of due process. We cannot set aside principles of fairness and reasonableness, but must show proper regard for them."].) The Hamada parties argue, "Unlike an evaluation of evidence for admissibility at trial or summary judgment— whereby the evidence must be held to a higher standard of proof based upon its credibility and likelihood of being *true*—evidence considered at the pleading stage, including upon a motion to quash, need only be such to reflect that 'constitutionally cognizable minimum contacts' appear to justify the imposition of jurisdiction." While the legal standard they describe for evaluating minimum contacts may be broadly accurate, there is no authority for the assertion that inadmissible evidence may be considered notwithstanding a proper objection or that the evidentiary standard on a motion to quash is different from, or less than, other pretrial motions.

The Hamada parties do contend Valgardson's declaration in the Utah action was properly authenticated by Caldwell and sufficient by itself to establish sufficient minimum contacts for specific personal jurisdiction relating to the contract at issue here. In that affidavit Valgardson stated he held licenses as a general contractor in California and in Utah and directly supervised "every aspect" of the Hamada job. Even assuming

9

this one item of evidence was admissible,[6] it fell far short of satisfying the Hamada parties' burden of proof. Valgardson's Utah affidavit stated only that he had supervised a job that was performed largely, if not exclusively, in Utah, under the terms of Hamada's contract with the corporate entity. There is no question IHC was obligated to perform under the contract; and IHC can only act through its agents and employees. Valgardson's activities as a corporate officer were essentially irrelevant. What was at issue in the motion to quash was whether he had individually engaged in purposeful tortious conduct directed to California, conduct that would be sufficient to support personal jurisdiction over him.

In an attempt to make the requisite showing, the Hamada parties highlight the purported use of Valgardson's individual California general contractor's license to prevent them from promptly discovering IHC's fraud. Merely holding a license in California is generally not sufficient, standing alone, to support personal jurisdiction over the license holder. (See *Crea v. Busby* (1996) 48 Cal.App.4th 509, 514-516 [no personal jurisdiction over Oregon resident although he was licensed to practice law in California when he had not practiced law in California in 14 years, did not maintain an office, solicit clients, advertise or own property or have obligations in California]; *Edmunds v. Superior Court* (1994) 24 Cal.App.4th 221, 234.) Nonetheless, it is a factor for the court to consider (*Crea,* at p. 516); and the use of that license as part of a scheme to commit a tortious action in California might very well be sufficient "purposeful availment" supporting specific jurisdiction for claims related to the use of that license. (See generally *Calder v. Jones* (1984) 465 U.S. 783, 789 [104 S.Ct. 1482, 79 L.Ed.2d 804]; *Taylor-Rush v. Multitech Corp., supra,* 217 Cal.App.3d at p. 118 ["[w]e are in agreement with those courts that have concluded that an unreasonable and anomalous result would occur if a nonresident individual, acting in his capacity as a corporate officer or director, committed a tort for which he may be personally liable and could shield himself from

_____

[6]     The Hamada parties did not request judicial notice of the Utah affidavit, and the foundation proffered by Caldwell as to its admissibility was negligible.

10

jurisdiction when he could not interpose the same shield as a defense to substantive liability"].) The only evidence Caldwell cited that Valgardson's license was used to this effect, however, was contained in emails between Kam Valgardson and Hamada's architect, which were forwarded from the architect to Hamada. The court excluded those email exchanges because Caldwell had not properly authenticated them and, as discussed, that ruling has not been challenged on appeal. As a result, the necessary link between Valgardson's contractor's license and his individual actions directed to California is absent. (See *Burdick, supra,* 233 Cal.App.4th at p. 24 ["'exercise of jurisdiction must be based on forum-related acts that were personally committed by each nonresident defendant'"]; *CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1118.)

### b. *Hamada's declaration*

Hamada's declaration, filed the day of the hearing on the motion to quash, attempted to cure the primary defect in Caldwell's declaration by demonstrating that Hamada had personal knowledge of the email exchanges in which she was told to use what turned out to be Valgardson's California general contractor's license to obtain regulatory approvals in California for her home. The court refused to consider the Hamada declaration because it was untimely and there was no meaningful explanation for the delay.

The Hamada parties contend the court erred in refusing to consider the late declaration but, apart from highlighting the detrimental effect of that exclusion, they do not address how that ruling, well within the court's discretion, was improper. (See § 1005, subd. (b) ["[a]ll papers opposing a motion . . . shall be filed with the court and a copy served on each party at least nine court days . . . before the hearing"]; see also Cal. Rules of Court, rule 3.1300(d) [recognizing court's discretion to refuse to consider late-filed papers].)

The Hamada parties alternatively argue the court should have, at the very least, granted a continuance to permit them to conduct discovery to acquire the jurisdictional facts necessary to oppose the motion to quash. To be sure, a plaintiff seeking to assert

11

jurisdiction over a nonresident defendant is entitled to conduct discovery regarding the jurisdictional facts necessary to sustain its burden of proof. (*In re Automobile Antitrust Cases I & II, supra,* 135 Cal.App.4th at p. 127; *Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 487.) To prevail on a motion for a continuance for jurisdictional discovery, however, the plaintiff must demonstrate the requested discovery is likely to develop facts establishing jurisdiction. (*In re Automobile Antitrust Cases*, at p. 127.) The trial court's determination whether that threshold burden has been satisfied is then reviewed for abuse of discretion. (*Ibid.*) Here, the Hamada parties did not ask the trial court to continue the hearing for this, or any other, purpose, much less identify any jurisdictional facts they needed to obtain in discovery to defeat the motion. The court had no obligation, on its own or in response to anything counsel for the Hamada parties said at the hearing,[7] to continue the hearing under the circumstances presented.

4. *The Motions To Vacate and for Reconsideration*

a. *Motion To Vacate*

The Hamada parties' appeal is directed primarily to the court's denial of their motion to vacate and/or for reconsideration. As to the motion to vacate, they argue Caldwell's attorney affidavit taking full responsibility for her own defective declaration and her failure to file Hamada's declaration in a timely manner satisfied the requirements for mandatory relief under section 473, subdivision (b), vacating the court's ruling on the motion to quash.

Section 473, subdivision (b), provides for both discretionary and mandatory relief.[8] Under the discretionary relief provision, on a showing of "mistake, inadvertence,

---

7      At the hearing on the motion to quash the court asked counsel to justify the late submission of the Hamada declaration. Caldwell responded, "[T]he court has the ability to make a ruling that either permits either jurisdictional discovery or to make a finding that is to the substance of the motion over the form." That statement, offered to justify the late submission of Hamada's declaration, cannot reasonably be construed as a request for a continuance to permit necessary discovery.

8      Section 473, subdivision (b), states, "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or

12

surprise, or excusable neglect," the trial court may allow relief from a "judgment, dismissal, order, or other proceeding taken against" a party based on its evaluation of the nature of the mistake or error alleged and the justification proffered for the conduct that occurred. Under the mandatory relief provision, on the other hand, upon a showing by attorney declaration of "mistake, inadvertence, surprise, or neglect," the trial court must vacate any "resulting default judgment or dismissal entered . . . ." (§ 473, subd. (b).) "The range of attorney conduct for which relief can be granted in the mandatory provision is broader than that in the discretionary provision, and includes 'inexcusable' neglect. But the range of adverse litigation results from which relief can be granted is narrower. Mandatory relief only extends to *vacating* a default which will result in the entry of a default judgment, a default judgment, or an *entered* dismissal." (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 616, italics in original (*Leader*).)

Although the statute refers generally to "dismissals," most appellate courts, examining the language and history of the statute, have concluded the Legislature intended the word "dismissal" to have a limited meaning in the context of the mandatory

_____

other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken . . . . No affidavit or declaration of merits shall be required of the moving party. Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties. However, this section shall not lengthen the time within which an action shall be brought to trial pursuant to Section 583.310."

13

relief portion of section 473, subdivision (b). (See, e.g., *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 148 (*English*); *Leader, supra,* 89 Cal.App.4th at p. 618.) Accordingly, mandatory relief has been restricted to those dismissals that are "procedurally equivalent to a default" and, in particular, when the plaintiff's counsel failed to oppose the motion to dismiss. (*Peltier v. McCloud River R.R. Co.* (1995) 34 Cal.App.4th 1809, 1817 ["when the Legislature incorporated dismissals into section 473 it intended to reach only those dismissals which occur through failure to oppose a dismissal motion—the only dismissals which are procedurally equivalent to a default"]; *Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058, 1070 ["'[A] default judgment is entered when a defendant fails to appear, and, under section 473, relief is afforded where the failure to appear is the fault of counsel. Similarly, under our view of the statute, a dismissal may be entered where a plaintiff fails to appear in opposition to a dismissal motion, and relief is afforded where the failure to appear is the fault of counsel.'"]; see also *Noceti v. Whorton* (2014) 224 Cal.App.4th 1062, 1067-1068 [applying limited meaning of "dismissal" as articulated in *English*]; *Hossain v. Hossain* (2007) 157 Cal.App.4th 454, 458 [same].)

Here, Caldwell submitted an opposition on behalf of her clients, appeared at the hearing and argued in opposition to the motion. The order quashing the service of the summons and complaint is simply not the procedural equivalent of a default. (See *Pagarigan v. Aetna U.S. Healthcare of California, Inc.* (2007) 158 Cal.App.4th 38, 45-46 [counsel's intentional conduct in failing to file timely complaint not subject to mandatory relief provisions; intentional conduct that "leads to a dismissal is not akin to a default"]; *Brown v. Williams* (2000) 78 Cal.App.4th 182, 189 [when plaintiff appeared and participated in hearing, plaintiff's counsel's failure to request trial de novo is not grounds for invoking mandatory relief provision; judgment entered against plaintiff was not the procedural equivalent of a default]; *Ayala v. Southwest Leasing & Rental, Inc.* (1992) 7 Cal.App.4th 40, 44 ["This case does not involve a default judgment. Respondents not only answered the complaint, they also participated in discovery and in an arbitration hearing. . . . [Citations.] Therefore respondents' motion to vacate the judgment fell

14

within the discretionary, rather, than the mandatory, provisions of Code of Civil Procedure section 473"].)  The court did not err in concluding mandatory relief for attorney fault under section 473, subdivision (b), was unavailable in this case.[9]

### b. *Motion for reconsideration*

A motion for reconsideration under section 1008 must be "based on new or different facts, circumstances, or law [citation], and facts of which the party seeking reconsideration was aware at the time of the original ruling are not 'new or different.'" (*In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468; see § 1008, subd. (a).)  In addition to demonstrating there are new or different facts, circumstances or law, the party seeking reconsideration must provide a satisfactory explanation for the failure to offer the new evidence earlier.  (*In re Marriage of Herr*, at p. 1468.)  We review an order denying a motion for reconsideration for abuse of discretion.  (*Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 871.)

The Hamada parties contend the court erred in denying their motion for reconsideration based on the "new evidence" or the "new circumstance" of Hamada's declaration.  However, Hamada's declaration, based on facts the Hamada parties knew at the time of the original ruling, did not provide "new or different" evidence, nor was any explanation advanced for the failure to offer the Hamada declaration in the first instance other than Caldwell's assertion that she had believed her own declaration would be sufficient to satisfy any evidentiary burden.  The court did not abuse its discretion in denying the reconsideration motion.  (See *New York Times v. Superior Court* (2005) 135 Cal.App.4th 206, 213 ["Although the evidence was new to the trial court, it was available to WSN throughout the discovery process and was easily obtainable, as demonstrated by the April 1 depositions. . . .  WSN failed to include any of this information in its

---

[9]     The Hamada parties do not contend the court abused its discretion under the discretionary provisions of section 473; accordingly, we do not consider that question. (See *Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1519 [appellate "'review is limited to issues which have been adequately raised and briefed'"]; *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230 [same].)

15

opposition to the summary judgment motion, or even mention it to the court until the end of the hearing, when it appeared that the court would rule against it. This evidence was not the type of 'new or different facts, circumstances, or law' that would justify reconsideration."]; *Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 692 [plaintiff's erroneous belief that certain evidence was not necessary at hearing on summary motion insufficient to justify reconsideration], disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.)[10]

## DISPOSITION

The order granting Valgardson's motion to quash is affirmed. Because Valgardson filed no respondent's brief, each party is to bear his and her own costs on appeal.


PERLUSS, P. J.


We concur:


WOODS, J.


ZELON, J.

---

[10] Contrary to the Hamada parties' assertion, our decision upholding the trial court's denial of Valgardson's motion to quash does not necessarily mean Valgardson is immune from any personal liability in this California action. If the Hamada parties prevail on their claims against IHC and succeed in establishing Valgardson's status as an alter ego of IHC, as they insist he is, they may pierce the corporate veil and execute any judgment against IHC against Valgardson personally. (See *Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1072-1073 [trial court has authority under § 187 to amend judgment to add a judgment debtor under the alter ego doctrine].)