Filed 6/26/23  Toberoff & Associates v. Daigle CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TOBEROFF & ASSOCIATES, P.C., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> GERALD J. DAIGLE, JR., <br><br> Defendant and Respondent. | B319706 <br><br> (Los Angeles County <br> Super. Ct. No. 18SMCV00170) |

APPEAL from an order of the Superior Court of Los Angeles County, H. Jay Ford III, Judge.  Affirmed.

Toberoff & Associates, Marc Toberoff and Jaymie Parkkinen for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, Anthony J. Ellrod and Steven J. Renick for Defendant and Respondent.

————————————

In 2018, plaintiff Toberoff & Associates, P.C. (the firm or the Toberoff firm) filed suit against Alan Donnes, alleging that Donnes made false statements disparaging the firm and its principal, Marc Toberoff,[1] to a group of the firm's clients, causing the clients to terminate the firm's representation. After Donnes died, the firm filed an amended complaint against several new defendants alleging that these new defendants collaborated with Donnes in his scheme.

One of the newly added defendants, Donnes's former business partner Gerald J. Daigle, Jr., filed a motion to quash service of summons of the complaint. Daigle, who resides in Louisiana, argued that he did not have the minimum contacts with California necessary to subject him to the jurisdiction of our state's courts. The Toberoff firm argues the trial court erred by granting the motion, and that it abused its discretion by denying the firm's request for discovery regarding Daigle's conduct in California. We affirm. The firm failed to show the controversy relates to or arises from Daigle's contacts with California, and the trial court reasonably determined that additional discovery was unlikely to lead to the production of evidence of facts establishing jurisdiction.

---

[1] We refer to Toberoff & Associates as the firm to distinguish it from Marc Toberoff.

# FACTUAL BACKGROUND AND PROCEEDINGS BELOW[2]

### A. Events Leading to the Heirs' Termination of the Toberoff Firm

In 1938, John W. Campbell, Jr. published a novella titled Who Goes There? about a group of scientists at a research outpost in Antarctica under attack from a shapeshifting alien. Campbell sold the film rights to the story for a flat fee, and in the following decades, the story was adapted into three separate films: first, in 1951, by RKO Radio Pictures under the title The Thing from Another World, and then in 1982 and 2011 by Universal Pictures under the title The Thing. The first two of these adaptations are viewed as classics of the science fiction and horror genres, suggesting the possibility of still more adaptations to come.

In 2015, Toberoff approached Campbell's heirs with news: a brief window had opened during which the heirs could terminate Campbell's previous grant of film rights in Who Goes There? The heirs signed an engagement agreement with the Toberoff firm to recover the film rights on their behalf in exchange for 50 percent of any proceeds deriving from the rights. The heirs were entitled to terminate the firm's engagement at any time, but the contract provided that if the firm succeeded in securing any rights to the

---

[2] Our account of the factual allegations and procedural history is drawn in part from our recent opinion in another appeal arising from this case, *Toberoff & Associates, P.C. v. Betancourt* (May 1, 2023, B319116) [2023 WL 3166698] [nonpub. opn.]). We take judicial notice of our prior opinion. (*Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1014.)

work, its "entitlement to its full [f]ee shall 'vest' even if the [f]irm is subsequently discharged or terminated by the" heirs.

In January 2016, the firm served notices on the current holders of the film rights, including Universal, informing them that the heirs intended to terminate the grant of rights to the novella pursuant to section 304 of the federal Copyright Act. (17 U.S.C. § 304(d).) The termination of rights did not take effect until January 2018, and the Toberoff firm did not attempt to market the film rights until that point.

In the summer of 2018, Donnes, an independent producer, entered the scene. He contacted Toberoff, claiming that he owned or controlled rights of RKO that would be necessary to make any new The Thing movie, and that he had a relationship with Universal or a production company at Universal. Toberoff understood the latter to mean defendant Blumhouse Productions, LLC (Blumhouse), a production company with a deal to produce films for Universal. According to Toberoff, a Blumhouse representative had recently contacted him with a proposal to option or purchase the film rights to Who Goes There? from the heirs. Toberoff was skeptical of Donnes's claims and demanded documentation of RKO's rights, which Donnes was unable to produce.

In late August 2018, Donnes contacted the heirs (who reside outside California) directly and waged a campaign to convince them to terminate the Toberoff firm's representation and to allow Donnes to handle the film rights to Who Goes There? On September 4, 2018, Donnes wrote an email to one of the heirs and to defendant John Betancourt, whose company published Campbell's novels and who had been advising the heirs regarding the film rights. In the email, Donnes offered to send a template

4

termination letter. The next day, Donnes wrote the heirs that, if they canceled their agreement with the Toberoff firm, Donnes's company would "pay any and all legal expenses billed by Mr. Toberoff, aside from his 50 [percent] share of any licensing fees." Donnes also offered the heirs "additional money for consulting work, executive producing, etc. These payments are NOT shared with Mr. Toberoff." He wrote that Toberoff was an obstacle to signing a deal because he would insist on receiving a producer credit and a high salary for himself as a part of any deal, and that Toberoff was "NOT wanted or welcome at any major studio and, to date, he has not produced a single film based on any of the over 40 story rights he has secured copyrights to." Donnes warned the heirs that Toberoff "is not working in your best interest."

On September 26, 2018, Donnes wrote an email on behalf of his production company, TLMC, promising to "pay all reasonable costs incurred and billed to you by Marc Toberoff and Associates. Additionally, TLMC will provide legal representation, at our cost, to represent you should he file any litigation related to his termination and/or production of the feature film." The following day, Betancourt sent Toberoff a termination letter on the heirs' behalf. Toberoff was blindsided by the termination letter. He "had received no indication of any kind from the [heirs] that [the firm's] services and performance were not fully satisfactory."

## B. Daigle's Involvement

There is little evidence of Daigle's involvement in the matter up to this point. In multiple email threads among Donnes, the heirs, and Betancourt in the month leading up to the termination of the Toberoff firm, Daigle's name appears only once, in passing. This occurred in an email dated September 23,

2018, from one of the heirs, Leslyn Randazzo, to the other heirs and Betancourt. In the email, Randazzo recounted a recent conversation with Donnes during which Donnes "[m]ade reference to . . . his . . . partner Jerry Dagel [*sic*]." Nothing in the email suggests Randazzo had heard of Daigle to that point, nor that she believed he would play a significant role going forward.

Daigle's name appears more frequently in correspondence after the termination. On October 3, 2018, Donnes included Daigle as a recipient of an email Donnes sent to Blumhouse suggesting, "we should set up a conference call so that you can get to know these great people [presumably the heirs] and they you." Nothing in the record of this appeal indicates whether Daigle indeed participated in the conference call with the heirs and Blumhouse, and if he did whether he said anything.

In an email chain from November 2018, Donnes corresponded with a Santa Monica-based attorney representing another production company, Stampede Ventures, regarding an offer to option the heirs' rights to The Thing. Daigle is listed as a recipient of these messages. Donnes explained that he was looking at the offer and stated, "we like it so far." In response to a follow-up email, Donnes wrote that Daigle would be "back in his office Wednesday," and would "handle business aspects on our side." The attorney responded that Daigle "can contact me." The record does not show whether Daigle actually contacted the attorney. Stampede did not ultimately option the heirs' film rights.

A few days later, on November 15, 2018, Donnes wrote to the heirs that "Daigle will soon be providing you all with an agreement between our entity and all other parties legally granting us the right to put the deal(s) together with either

6

Stampede or Blumhouse." Later that month, Daigle signed a "shopping agreement" on behalf of TLMC. Under this agreement, the heirs granted TLMC the exclusive right to seek financing for the development of Who Goes There? into a film or other production through May 2019.

In a December 2018 email chain among Donnes, the heirs, Betancourt, and the heirs' attorney regarding Toberoff's claim to a share of the proceeds of a board game based on Who Goes There?, Donnes wrote, "Let's keep [Daigle] looped in going forward," and added Daigle's email address to the list of recipients. Daigle did not reply, and the other participants in the email chain ignored Donnes's request and did not include Daigle's address in their subsequent emails.

In January 2019, Daigle wrote to the heirs' Maryland-based attorney proposing an option contract for Who Goes There? on behalf of TLMC. The record does not show that the heirs ever negotiated further on an option agreement with TLMC, nor whether Daigle participated in any subsequent conversations. In November 2019, nearly six months after TLMC's shopping agreement expired, the heirs agreed to sell the rights to Who Goes There? to Universal at a price the Toberoff firm deemed far below the true market value. TLMC was not a party to this purchase agreement, and the record does not indicate whether Daigle played any part in negotiations with Universal.

C.    **Legal Proceedings**

On November 6, 2018, less than six weeks after the heirs sent the termination letter, the Toberoff firm filed a complaint against Donnes and additional unnamed Doe defendants, alleging causes of action for intentional and negligent interference with contractual relations, and intentional and

7

negligent interference with prospective economic advantage. The complaint alleged that Donnes made false and misleading statements to the heirs about his relationship with Universal and his control of film rights to The Thing. According to the complaint, Donnes also made false statements about Toberoff in an effort to convince the heirs to end the firm's representation. The complaint alleged that Donnes acted "on his own, or in coordination with other Doe defendants" (capitalization omitted) in convincing the heirs to fire Toberoff. The complaint did not mention Daigle's name.

In July 2020, Donnes died. In July 2021, the court, upon learning the sole named defendant in the case had passed away, allowed the Toberoff firm five days to file an amended complaint naming the previously unnamed Doe defendants.

On July 14, 2021, the firm filed the operative first amended complaint. The new complaint alleged the same causes of action for intentional and negligent interference with contractual relations and with prospective economic advantage, as well as a new cause of action for unfair competition. In place of Donnes, the complaint listed as defendants TLMC, Daigle, Betancourt, Wildside Press, LLC (Betancourt's publishing company), and Blumhouse. The firm alleged that the "[d]efendants joined forces and approached the [heirs] directly through Donnes with misrepresentations and derogatory statements regarding [Toberoff], aimed at alienating [Toberoff] and ultimately inducing the [heirs] to terminate without cause their relationship with [the firm], causing significant financial loss to both the [heirs] and [the firm]."

The new complaint described Daigle as "Donnes's long-time partner" and "a longstanding member of TLMC." It alleged that

8

"Donnes acted with or as the agent for TLMC and his partner
Daigle," and that "Daigle and/or TLMC offered financial and legal
assistance to the [heirs] to induce them to terminate" the
Toberoff firm.  The complaint did not allege, however, that Daigle
personally made any disparaging statements about Toberoff or
his firm.

On September 21, 2021, Daigle filed a motion to quash
service of the complaint on the ground that the court lacked
personal jurisdiction over him.  The trial court granted the
motion on February 10, 2022, finding that the Toberoff firm had
failed to show Daigle purposely availed himself of the benefits of
California, as required for special jurisdiction of a nonresident.

## DISCUSSION

### A.     The Trial Court Did Not Err in Granting the Motion to Quash

A defendant may challenge the trial court's personal
jurisdiction over him by filing a motion to quash service of
summons.  (See *Bader v. Avon Products, Inc.* (2020) 55
Cal.App.5th 186, 192; 2 Witkin, Cal. Procedure (6th ed. 2023)
Jurisdiction, § 233.)  Upon the filing of such a motion, "the
plaintiff bears the burden of proving facts supporting the exercise
of jurisdiction by a preponderance of the evidence." (*Bader*,
*supra*, at pp. 192-193.)

When reviewing a trial court's decision on jurisdiction,
"[w]e defer to the . . . court's factual findings that are supported
by substantial evidence." (*Farina v. SAVWCL III, LLC* (2020) 50
Cal.App.5th 286, 293 (*Farina*).)  "When no conflict in the evidence
exists, . . . the question of jurisdiction is purely one of law and
the reviewing court engages in an independent review of the
record." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14

9

Cal.4th 434, 449.)  However, "[e]ven where the pertinent facts are essentially undisputed, . . . the resolution of a particular legal question may require 'the drawing of inferences from the presented facts . . . .'  [Citation.]  In such a case, no pure question of law is presented, and an appellate court must apply the substantial evidence test to a trial court's ruling, giving deference to any inferences drawn by the trial court in support of its resolution of a particular question . . . ."  (*CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1119.)  "We independently review the trial court's application of law to facts." (*Farina*, *supra*, at p. 294.)

"Personal jurisdiction can be general (all-purpose) or specific (case-linked).  (*Bristol-Myers* [*Squibb Co. v. Superior Court* (2017)] 582 U.S. [255,] 262 [137 S.Ct. 1773, 198 L.Ed.2d 395] [(*Bristol-Myers*)].)  A court has general jurisdiction over defendants who are at home in the court's forum; general jurisdiction allows a court to hear any claim against a defendant, regardless of where the underlying events occurred.  (*Farina*, *supra*, 50 Cal.App.5th at p. 294.)  In contrast, specific jurisdiction allows a court to adjudicate only those disputes relating to the defendant's contact with the forum.  (*Ibid.*; *Bristol-Myers*, at p. [262].)"  (*Bader v. Avon Products, Inc.*, *supra*, 55 Cal.App.5th at p. 193.)

Daigle is not a California resident, and the Toberoff firm does not allege that Daigle has "substantial and systematic contacts in [California] sufficient to establish general jurisdiction." (*Vons Companies, Inc. v. Seabest Foods, Inc.*, *supra*, 14 Cal.4th at p. 446.)  We therefore focus our discussion on the law relevant to specific jurisdiction.

In determining specific jurisdiction, "courts apply a three-prong test. [Specific] jurisdiction exists where: (1) the defendant has purposefully availed itself of a forum's benefits; (2) the controversy relates to or arises out of the defendant's contacts with the forum; and (3) the exercise of jurisdiction comports with fair play and substantial justice." (*Farina*, *supra*, 50 Cal.App.5th at p. 294.)

The trial court found that the Toberoff firm failed to meet its burden as to the first prong, to establish Daigle's "purposeful availment of California's benefits." In other words, the firm had failed to show that Daigle "intentionally direct[ed] [his] activities at [California] such that, by virtue of the benefits [he] has received, [he] should reasonably expect to be haled into [California]'s courts." (*Farina*, *supra*, 50 Cal.App.5th at p. 294.)

The Toberoff firm contends this was error. It argues that Daigle directed his activities toward California in several ways. He participated in conference calls with Donnes and Blumhouse employees located in California. In addition, an email from Donnes to Stampede's lawyer suggested that Daigle would call the lawyer in California to discuss Stampede's offer to option the heirs' film rights. Finally, the firm argues that Donnes's emails show that Daigle was in frequent contact with Donnes, who lived in California.

"[O]n appeal, we do not review the *reasons* why the trial court ruled as it did, but consider the validity of its *ruling*. If a trial court's ruling is correct, we will affirm, even if its reasoning was flawed." (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 117 (*Automobile Antitrust*).) In this instance, we need not decide whether the trial court erred by finding the Toberoff firm failed to carry its burden as to purposeful

11

availment because, even if so, the firm's effort to establish jurisdiction fails for a separate reason. It has failed to "prove[ ] the second prong of [the] jurisdictional test—whether the controversy is related to or arises out of [Daigle's] contacts with California." (*Id.* at p. 116.)

To satisfy the second prong of the specific jurisdiction analysis, "There must be 'a connection between the forum and the specific claims at issue.' [Citation.] 'If the operative facts of the allegations of the complaint do not relate to the [nonresident]'s contacts in this state, then the cause of action does not arise from that contact such that California courts may exercise specific jurisdiction.' [Citation.]" (*Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 399 (*Rivelli*).) "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum [s]tate.' [Citation.]" (*Bristol-Myers*, *supra*, 582 U.S. at p. 264; see also *Ford Motor Co. v. Montana Eighth Judicial Dist. Court* (2021) ___ U.S. ___ [141 S.Ct. 1017, 1026, 209 L.Ed.2d 225] ["the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum"] (*Ford Motor Co.*).)

*Rivelli* demonstrates an application of this test. In that case, the defendant purposefully availed himself of California by serving actively on the board of a California corporation for two years and negotiating the transaction at issue in the case. (*Rivelli*, *supra*, 67 Cal.App.5th at p. 405.) Nevertheless, the court held that the plaintiffs had failed to meet their burden at the second prong because they "offered no evidence of fraudulent or tortious misconduct, or of any actual wrongdoing by [the defendant], directed at" California. (*Id.* at p. 406.)

12

In *Rivelli*, the court affirmed two principles central to analyzing claims of specific jurisdiction. First, " '[e]ach defendant's contacts with the forum [s]tate must be assessed individually.' " (*Rivelli*, *supra*, 67 Cal.App.5th at p. 404, quoting *Keeton v. Hustler Magazine, Inc.* (1984) 465 U.S. 770, 781, fn. 13 [104 S.Ct. 1473, 79 L.Ed.2d 790]; accord, *Automobile Antitrust*, *supra*, 135 Cal.App.4th at pp. 117-118 ["plaintiff[ ] must present evidence to support a finding that California may exercise jurisdiction over *th[is] particular defendant[ ]*"].) Second, "[t]o meet [its] burden, a plaintiff must do more than make allegations. A plaintiff must support its allegations with 'competent evidence of jurisdictional facts. Allegations in an unverified complaint are insufficient to satisfy this burden of proof.' [Citation]." (*Rivelli*, *supra*, at p. 393.) As the court explained in *Automobile Antitrust*, "Typically, the plaintiff need not establish the merits of the complaint in order to prove jurisdiction. [Citation.] However, when personal jurisdiction is asserted on the basis of a nonresident defendant's alleged activities in this state, facts relevant to jurisdiction may also bear on the merits of the case." (*Automobile Antitrust*, *supra*, at p. 118.)

The Toberoff firm has failed to meet this burden with respect to Daigle. The principal allegation in the firm's complaint is that Daigle was part of "an illicit scheme and coordinated effort . . . to circumvent [the firm] and cheaply seize control of" the film rights to Who Goes There? The firm claimed that "Donnes, in league with the other [d]efendants, made false and misleading representations, derogatory statements regarding [the firm], and engaged in other wrongful conduct, which enabled [d]efendants to gain unearned control of the rights in the book." But the firm

13

points to no evidence of Daigle's involvement in this effort. As noted above, the record contains only one reference to Daigle from the period before the alleged scheme came to fruition when the heirs terminated the firm on September 27, 2018. And that email indicated merely that Donnes had mentioned Daigle in a conversation with one of the heirs. It did not implicate him in any malfeasance, much less any malfeasance connected with California.

The Toberoff firm argues that it has overcome this lack of direct evidence of wrongdoing by Daigle in two ways. First, it argues that Daigle was responsible for Donnes's actions in California because Donnes acted as Daigle's operative. Second, it argues that Daigle's participation with Donnes in an attempt to exploit the film rights after the firm's termination was sufficient to subject Daigle to the court's jurisdiction. We find both of these arguments unpersuasive.

The firm is correct that "activities that are undertaken on behalf of a defendant may be attributed to that defendant for purposes of personal jurisdiction if the defendant purposefully directed those activities toward the forum state." (*Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969, 981.) But the trial court could fairly infer from the facts before it (as it did) that the firm "fail[ed] to establish that Daigle purposefully directed Donnes'[s] actions." No evidence at all indicates that Daigle directed Donnes's actions prior to the firm's termination. Following the termination, when Donnes received an offer from Stampede Ventures in November 2018 to option the heirs' rights, he replied, "we have it and are going over it as we speak." Later that week, he wrote, "we will reach out tomorrow and . . . I will likely send an email later today." Three days later,

14

he wrote that Daigle would be "back in his office Wednesday," would "handle business aspects on our side," and that Daigle would contact Stampede's lawyer. At around the same time, Donnes wrote to the heirs that "Jerry Daigle will soon be providing you all with an agreement between our entity and all other parties legally granting us the right to put the deal(s) together with either Stampede or Blumhouse. Knowing Jerry, it will be created in as simple a way as possible." The record includes a "shopping agreement" dated one day after this email that indeed grants TLMC "including producer Jerry Daigle, the exclusive right during the period through May 31, 2019[,] to arrange for the possible financing, development, production and/or exploitation" of films and television programs based on Who Goes There?

This course of events suggests that Donnes was the primary decision-maker and delegated tasks to Daigle, and that such delegation occurred after the firm was terminated; it did not show Daigle purposefully directed Donnes's activities toward California. As substantial evidence supported the trial court's conclusion on this point, we may not second guess its finding. (*Farina*, *supra*, 50 Cal.App.5th at p. 293; *CenterPoint Energy, Inc. v. Superior Court*, *supra*, 157 Cal.App.4th at p. 1119.)

The Toberoff firm's argument that Daigle's involvement in the events after the firm's termination subjects it to the court's jurisdiction likewise fails to withstand scrutiny. We do not understand how Daigle could be liable for interference with contractual relations on the basis of actions he took *after* the contract between the heirs and the Toberoff firm had already been terminated. The remaining claims, for interference with prospective economic advantage, require that the defendant's

15

acts were "wrongful by some independent legal measure, beyond interference." (*Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 429; accord, *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143, 1153.) The only allegations in the complaint of wrongful acts against the Toberoff firm were the alleged disparagement and defamation by Donnes and Betancourt, not Daigle, prior to the termination.

The firm argues that Daigle's actions related to the tortious conduct because they contributed to the firm's damages. We are skeptical in light of *Bristol-Meyers* and *Ford Motor Co.* that a defendant who played no part in California-based wrongful conduct may be subject to the jurisdiction of California courts on the basis of his participation in subsequent activities that led the plaintiff to suffer damages, and the Toberoff firm has cited no case law affirming jurisdiction on this basis. Nevertheless, even if we assume the firm's position is correct, its argument fails here because the firm has produced no evidence that Daigle's actions caused the firm to suffer damages. The firm's theory of damages is that, because the firm was no longer representing the heirs, "the [d]efendants induced and misguided the [heirs] into accepting a financially unfavorable, low-ball agreement with Universal/Blumhouse," thereby reducing the amount payable to the firm under the terms of its engagement agreement. But the record contains no evidence connecting Daigle with any negotiations with Universal or Blumhouse. The only direct connection the firm has shown between Daigle and anyone associated with Universal or Blumhouse was a single conference call in early October 2018, in which it is not clear what, if anything, Daigle actually said. In November 2018, Daigle may

16

have spoken with an attorney representing Stampede Ventures, but Stampede did not sign a contract with the heirs, lowball or otherwise. Daigle also proposed an option agreement to the heirs on behalf of TLMC, but the heirs did not option the rights to TLMC. The heirs did sign a "shopping agreement," which Daigle apparently drafted, but that agreement gave TLMC the exclusive right to market the heirs' rights to Who Goes There? only until May 2019. The heirs did not sign an agreement regarding the film rights until November 2019, months after the shopping agreement expired. And there is no indication in the record that Daigle played any part in the negotiation of that contract, nor that the contract involved TLMC in any way.[3]

## B. The Trial Court Did Not Abuse Its Discretion in Denying Jurisdictional Discovery

The Toberoff firm contends the trial court abused its discretion by denying its motion to obtain jurisdictional discovery from Daigle. The firm admits that it did not seek discovery from Daigle when it first filed suit against Donnes in 2018, and asserts that it had not yet had an opportunity to propound discovery

---

[3] Toberoff asserts that TLMC was involved in the deal between the heirs and Universal, and that Donnes and Daigle were attached as producers of the movie in development based on the heirs' rights, but we can find no evidence of these claims in the record. In particular, the copy of the contract between the heirs and Universal in the record is heavily redacted, and the readable portion includes no mention of TLMC, Daigle, or Donnes. The "appellant has the burden of providing an adequate record. [Citations.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the] appellant." (*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935.)

requests on Daigle when he filed the motion to quash.  The firm proffered 13 requests for the production of documents and 14 interrogatories that it would submit to Daigle if the trial court granted its motion.  These include requests to identify, describe, and produce records of communications between Daigle and the various parties involved in the case, along with requests for Daigle to account for his visits to California and for the projects on which he worked with Donnes.  The trial court denied the motion on the ground that the firm "fail[ed] to make any showing that discovery would likely produce evidence of Daigle's additional contacts."

A party is ordinarily entitled to a continuance to obtain discovery of jurisdictional facts, but "[i]n order to prevail on a motion for a continuance for jurisdictional discovery, the plaintiff should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction." (*Automobile Antitrust*, *supra*, 135 Cal.App.4th at p. 127.)  The trial court has discretion to decide whether to grant such a motion, and "we will not reverse the trial court's ruling unless we find a manifest abuse of that discretion."  (*Ibid.*)

We perceive no such abuse of discretion in this case. Through its previous discovery efforts, the firm obtained a wide array of email communications among Donnes, Betancourt, and the heirs, in which all parties discussed their plans regarding Toberoff, his firm, and the film rights openly.  These emails show that Donnes included Daigle as a recipient when he believed Daigle was relevant, and that he made no attempt to hide his efforts to persuade the heirs to terminate their relationship with the Toberoff firm.  In short, significant communications about the relevant course of events and who was involved in them were

18

already before the court.  If Daigle played an active role in the effort to persuade the heirs to dump the Toberoff firm involving communications directed at California, we expect we would see some indication of that in the existing discovery.  Instead, there is none.  We also expect that if the firm thought such evidence likely existed, it would not have waited until after it filed its opposition to the motion to quash to move ex parte to undertake such discovery.[4]  In light of the facts before it, the trial court could reasonably conclude further discovery would not likely lead to production of evidence establishing jurisdiction.  (*Automobile Antitrust*, 135 Cal.App.4th at p. 127.)

---

[4] The motion to quash was filed in September 2021.  The pendency of an anti-SLAPP motion by other defendants stayed discovery until the resolution of that anti-SLAPP motion in early November 2021.  (Code Civ. Proc., § 425.16, subd. (g).)  Nothing in the record indicates that the firm sought leave to conduct jurisdictional discovery during the pendency of the anti-SLAPP motion, as the statute permits for good cause shown.  (*Ibid*.)  Instead, the firm waited until February 2, 2022, to file an ex parte application seeking jurisdictional discovery—shortly after it filed its opposition to the motion to quash and approximately one week before the hearing on the motion to quash.

## DISPOSITION

The trial court's order granting Daigle's motion to quash service of summons is affirmed.  Daigle is awarded his costs on appeal.

NOT TO BE PUBLISHED.


                                                    WEINGART, J.


We concur:



        CHANEY, J.



        BENDIX, Acting P. J.

20